**In the Interest of M.P.W., Plaintiff**

**Juvenile Officer, Respondent,**

v.

**R.H.W. (Natural Father), Appellant.**

**No. WD 55064.**

Missouri Court of Appeals,
Western District.

Jan. 5, 1999.

Cathelene Louise Winger, Harrisonville, for appellant.

W C Hodge, Knob Noster, for respondent.

Before PATRICIA BRECKENRIDGE, P.J.,C.J., LAURA DENVIR STITH, and VICTOR C. HOWARD, JJ.

LAURA DENVIR STITH, J.

R.H.W. (Father) appeals the termination of his parental rights to M.P.W., W.R.W., R.P.W., and R.D.M. He alleges that the trial court never properly obtained jurisdiction over his children because the order by which it purported to do so in each case was entitled "order" rather than "judgment" and thus was not final and appealable. Father also claims there was insufficient evidence to support termination of his parental rights and argues that the trial court erred in denying a continuance so that he could attend the trial once he was released from prison. Counsel for Father further asserts he was ineffective for not filing a writ of habeas corpus ad testificandum to allow Father to attend the hearing while he was in prison. Finding no merit to any of the allegations of error, we affirm.

I. FACTUAL AND PROCEDURAL BACKGROUND

On February 23, 1995, the Juvenile Court of Johnson County, Missouri took jurisdiction over the four minor children, M.P.W., W.R.W, R.P.W., and R.D.M., based on allegations that they had been left unattended in an unsanitary trailer which smelled of natural gas while the natural mother attended a party. There were also allegations that Mother is an illegal drug user and that she has used drugs while the children were present in the home. The court obtained jurisdiction over the children but released them to Mother's physical custody contingent upon her compliance with a Department of Family Services (DFS) service agreement. Father, who is the biological father of only two of the children, but who was married to Mother at the time of the birth of the other two children, also signed this and other DFS service agreements.

On March 14, 1995, the Juvenile Officer of Howell County, Missouri filed a Petition alleging that all four children had been left with their grandmother with no provision for their care and that the whereabouts of Mother was unknown. On that date, Mother had in fact been arrested and was for most of that day in jail in Warrensburg, Missouri. The following day, March 15, 1995, the Juvenile Court of Johnson County issued Orders of Protective Custody based on the above allegations and the children were placed in the custody of the DFS. On May 11, 1995, the court modified its previous order. It retained its jurisdiction over the children and placed them in DFS' custody for placement in foster care.

DFS retained custody and jurisdiction of the children for the following two years, during which it made various efforts to assist the parents toward reunification. Father contests the adequacy of those efforts. Whatever their adequacy, on March 27, 1997, the Juvenile Officer filed Petitions to Terminate Parental Rights seeking to terminate both Mother's and Father's parental rights to the four children. The Petitions alleged as to Father, *inter alia,* that for six months prior to the filing of the Petitions to Terminate Parental Rights, the following conditions existed: Father failed to provide financial support or make arrangements to visit or communicate with the children; Father repeatedly and continuously failed, although physically and financially able, to provide the children with adequate food, clothing, shelter, or education and other care and control necessary for physical, mental and emotional health and development; that the children had been under the court's jurisdiction for over one year and that the conditions which led to the assumption of jurisdiction still persisted; that all efforts of the juvenile officer and DFS to aid Father on a continuing basis failed and that there were no additional services which would be likely to bring about a lasting parental adjustment.

On September 19, 1997, the court held a hearing on the Petition to Terminate. He entered a judgment on October 1, 1997, terminating both Mother and Father's parental rights to the four children. Father's rights were terminated on the grounds that he had shown a disinterest and lack of commitment to the children and continuously neglected his children in that he had not maintained regular visitation or other contact with the children during the period in which they had been in protective custody, did not make payments to defray their cost of care or maintenance, although financially able to do so, and that additional services would not be likely to bring about a lasting parental adjustment enabling a return of the children to Father within an ascertainable period of time. The court also terminated the parental rights of the natural fathers of the two children not fathered by appellant herein, based on a finding of abandonment. Neither these two natural fathers nor Mother appeal the termination of their parental rights. Father does, however, appeal the termination of his parental rights for all four children.

## II. STANDARD OF REVIEW

■ We will affirm the trial court's order terminating a parent's rights unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *In Interest of D.T.B.*, 944 S.W.2d 321, 322 (Mo.App.1997). We review the facts and all reasonable inferences therefrom in the light most favorable to the trial court's order. *D.T.B.*, 944 S.W.2d at 322; *In Interest of J.M.L.*, 917 S.W.2d 193, 195 (Mo.App. 1996).

## III. JURISDICTION OF THE TRIAL COURT TO TERMINATE PARENTAL RIGHTS

Father argues that the court never had jurisdiction over the children because the trial judge's entry of an "order" placing the jurisdiction of the children in the family court and finding that the conditions alleged in the Petition existed was not a final, appealable judgment as required by Rule 120. Therefore, Father argues, there has been no final determination whether the children are properly within the juvenile court's jurisdiction. In the absence of such a determination, Father asserts, the juvenile court had no authority to terminate his parental rights.

■ Father is correct that the court must give notice, hold a hearing, and make a determination at the time it takes jurisdiction of the children, that the conditions alleged in the Petition exist. We addressed this issue in *In Interest of D.L.D.*, 701 S.W.2d 152, 160–61 (Mo.App.1985). We there held that the juvenile court obtains subject matter jurisdiction of the child when the child is taken into custody by the filing of a Petition. We also stated, however, that the juvenile court must then give the parents notice and hold an evidentiary hearing into the merits of the allegations of the Petition. Such a hearing was never held in *D.L.D.*, and, therefore, the allegations of the Petition remained just that—allegations. The juvenile court was thus without authority to later determine, in a termination of parental rights proceeding, that the conditions which led the court to take jurisdiction still existed, for the court had never made the preliminary determination as to what conditions in fact did exist at the time the court took jurisdiction. *D.L.D.* therefore held that the court was without authority to terminate parental rights at that time.

Here, however, the trial court did hold a hearing on the Petition under which the court acquired jurisdiction of the children, and did determine that the allegations of the Petition were valid. Specifically, its order stated:

### ORDER

Now on this 23rd day of February, 1995, comes Deputy Juvenile Officer, Kellie Tietjens; attorney for the Juvenile Office, James Thompson; the biological mother, [M.W.] James Baker, attorney for the biological mother; Rebecca Tilly, Division of Family Services; and the juveniles by attorney and Guardian Ad Litem, John Edmiston.

Attorney James Baker's motion for leave to withdraw is denied. Natural mother's request for a continuance to retain private counsel is denied. Evidence presented. The Court finds that the allegations in the Petition filed by the Juvenile Officer are true and correct. The Court finds that it is in the best interests of the juveniles for this Court to take jurisdiction over said juveniles.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that this Court takes jurisdiction over said juveniles, and the actual physical custody of said juveniles is placed with their natural mother, [M.W.] under the supervision of the Juvenile Officer and the Division of Family Services on the condition that the natural mother comply with the terms of the written Service Agreement to be signed by the Court and the parties. The Court will delete any references in the Service Agreement to consumption of alcohol by the natural mother at this time.

On its face, this order would appear to comply with the requirements set out in *D.L.D.* The court later issued an amended order which was similar in relevant respects.

Father contends that the court's order does not give it jurisdiction, however, because it is entitled "order" rather than "judgment." As Father correctly notes, Rule 74.01 states that a ruling is not final and appealable unless it is denominated a judgment.[1] *See City of St. Louis v. Hughes,* 950 S.W.2d 850 (Mo. banc 1997). Moreover, Rule 120 states that appeals of rulings in juvenile cases lie from final judgments. Since the order is not denominated a judgment, Father argues, it is not final or appealable, and therefore cannot serve as the predicate for the court's later termination of parental rights.

 While Father's argument is innovative and creative, we do not find it persuasive. First, assuming for the moment that the dispositional order had to be appealable for the court to later issue a termination

order, we disagree that the dispositional order was not properly denominated as a judgment. While the order could have been clearer, it specifically stated that it is "ordered, adjudged and decreed" that the court acquires jurisdiction over the children. The Supreme Court has said that an order need not be entitled "judgment" so long as the word "judgment" appears in the order. *Hughes,* 950 S.W.2d at 853. Here, the trial court stated that it "ordered, adjudged and decreed" that it had jurisdiction over the children. Clearly the language in the operative portion of the order that the matter is "adjudged" demonstrates that the court is making a judgment. That was adequate to make the order appealable.

Second, in *In Interest of M.D.S.,* 837 S.W.2d 338, 339–40 (Mo.App.1992), this Court held that appeal will lie from an order taking jurisdiction of children, since it determines the fundamental right of natural parents to rear their own children. This ruling is consistent with the rules governing juvenile court procedure. While Rule 120 does refer to appeal of final judgments, it does not require the judgment itself to use the word "judgment." Any implication to the contrary is belied by the Supreme Court's adoption of the Juvenile Procedure Form contained in Rule 128.14, and comparable forms, which provide for the court to issue an "order" of disposition, and to order where custody of the child be placed. The Forms do not require use of the word "judgment."

Neither does the relevant statute, Section 211.261, RSMo.1994, require use of the word "judgment." To the contrary, it states that appeal may be taken *"from any final judgment, order or decree* made under provisions of this chapter" (emphasis added). The order in this case specifically stated that the court "adjudged, ordered and decreed" that the court take jurisdiction over the juveniles. This clearly complied with the statute.

 Finally, nothing in the juvenile rules states that Rule 74.01 is applicable to appeals

---

1. Rule 74.01(a) states:

 "Judgment" as used in these rules includes a decree and any order from which an appeal lies. A judgment is rendered when entered. A

 judgment is entered when a writing signed by a judge and *denominated* "judgment" is filed. The judgment may be a separate document or included on the docket sheet of the case.

from dispositional orders. In contrast, Rule 110.04 states, "If no procedure is specifically provided in these rules, the juvenile court shall be governed by the practice and procedure customary in proceedings in equity, *and by Rules 41 through 101 to the extent not inconsistent herewith*" (emphasis added). Similar language was at issue in *State v. Reber,* 976 S.W.2d 450 (Mo. banc 1998). In that case, as here, appellant argued that a ruling under Rule 24.035 was not final for purposes of appeal since it was denominated "order" rather than "judgment." Our Supreme Court noted that Rule 24.035 states that motions under that rule are to be "governed by the rules of civil procedure insofar as applicable." Because Rule 24.035 denominates a ruling on a Rule 24.035 motion as an "order," *Reber* held that Rule 74.01's requirement that a ruling be denominated a "judgment" simply was not applicable, and that, although the ruling was denominated "order," it was final and appealable. Here, as in *Reber,* we hold that, to the extent that Rule 74.01 is inconsistent with the Forms approved by the Supreme Court for dispositional orders in juvenile cases, it is not controlling. The order was appealable.

For all of these reasons, we reject Father's jurisdictional argument.

## IV. SUFFICIENCY OF THE EVIDENCE

In Missouri, parental rights may be terminated where the trial court finds it is in the best interest of the child and where it appears by clear, cogent, and convincing evidence that one of the grounds for termination under Section 211.447 RSMo Supp 1997 exists. *In Interest of W.S.M.,* 845 S.W.2d 147, 150 (Mo.App.1993). In terminating Father's parental rights in this case, the trial court found that the termination was in the best interests of the children and that it appeared by clear, cogent and convincing evidence that three statutory grounds for termination existed.

First, the court found that Father had abandoned the children because, for a period of over six months, Father had left them without provision for their support and without making arrangements to visit with or communicate with them, although able to do

so. This is a basis for termination under Section 211.447.2(1).

Second, the court also found that the children had been adjudicated to be abused and neglected in that there was a repeated and continuous failure by Father to provide the children with adequate food, clothing, shelter or education and other care necessary for their development, although Father was able to contribute at least somewhat to such care. This is a basis for termination under Section 211.447.2(2).

Third, the court found that the children had been under the jurisdiction of the juvenile court for one year and that the conditions which led to the assumption of jurisdiction still persisted and that the continued existence of the parent-child relationship greatly diminished their prospects for early integration into a stable and permanent home. This is a basis for termination under Section 211.447.2(3).

Father takes issue with the trial court's findings, arguing that there was insufficient evidence: (1) that he did not financially support his children; or (2) that he abandoned or neglected the minor children since he was incarcerated. He also argues that termination was improper because (3) there was no evidence DFS offered Father any services; and (4) Father's deficiencies were a product of chemical dependency and DFS did not adequately attempt to assist him to overcome this dependency.

We find, however, that the evidence adduced below supported the court's determination to terminate Father's parental rights. The court below specifically found that Father had consistently failed to make progress in complying with his service agreements entered into with DFS, that Father had not maintained regular visitation or contact with the children or made any payments for their support although financially able to do so, that he showed a disinterest in the children, and that additional services would not be helpful within an ascertainable period of time.

In support of his claim that he did not refuse to financially support his children, Father points to evidence that he was only

$3000 behind in child support when the court gained jurisdiction over the children in 1995, and that this must mean he had paid substantial amounts between 1986 and 1995. He also notes there was little evidence that he was gainfully employed during much of this period. Even so, the evidence showed that Father did not support the children once the juvenile court was granted jurisdiction over them, and that he had at least some funds with which to do so prior to his incarceration in March 1997, and had earned some small amounts during his incarceration, yet contributed nothing to the children. This supported the trial court's finding of a failure to provide support, and of abandonment.

Although Father argues that his incarceration prevented him from visiting his children, he was not incarcerated until March 1997, yet he failed to visit three of the children before that time at all, and he did not attempt to arrange visitation with any of the children while incarcerated. While Father did visit one of his sons on four occasions, these four visits all occurred between March and August 1996. Father did not attempt any other visits, so far as the record shows, at any point during the more than 18 months they were in the custody of the juvenile court before the Petition to Terminate Parental Rights was filed.

Father claims that DFS did not attempt to provide him with services, but the record shows that it did offer him services such as financial support, marital therapy, individual therapy, recommending him to Parent Aide, arranging visits with the children, and five service agreements. Father never requested additional services, and failed to take advantage of all of those that were offered. For instance, he attended only one of several permanency planning review (PPRT) meetings with DFS and DFS did not hear from him or know where he was living after March 1996. The trial court specifically found that additional services would not be likely to bring about a lasting parental adjustment enabling return of the children to Father. In these circumstances, DFS was not required to offer Father additional services before moving the court to terminate his parental rights.

Lastly, Father asserts that the court could not terminate his parental rights without first requiring DFS to provide him with services to help him overcome his chemical dependency. However, as the trial court noted, while there was evidence that Father was incarcerated for drug use, no testimony or other evidence was offered that this drug use was the result of a chemical dependency problem. Moreover, he presented no evidence that additional services directed to his alleged drug dependency problem would have been successful.

For these reasons, we find that the evidence supported the trial court's decision to terminate Father's parental rights.

## V. DENIAL OF REQUEST FOR CONTINUANCE

On the day of the hearing, Father's counsel for the first time made a request for continuance. In support, he noted that Father would be released from imprisonment in approximately one month, and said that he wanted the court to continue the case until that time so that Father could attend the hearing in person. The motion was never reduced to writing, and was denied by the trial judge. Father now alleges that the trial court abused its discretion in denying the request for continuance.

We will reverse a trial court's denial of a motion for continuance only if we find the denial constituted an abuse of discretion. *Clark v. Wentzville R–IV School District,* 848 S.W.2d 608 (Mo.App.1993). We find no such abuse of discretion here. Rule 65.03 requires that requests for continuance be in writing. Here, the request was not only not in writing, but it was not made until the start of the hearing. A continuance at that point would have inconvenienced the other parties and the court, who were all ready to proceed. In the absence of evidence that counsel could not have moved for a continuance sooner, the trial court did not abuse its discretion in denying the oral request for continuance. *See Swanson's Inc. v. Scott,* 578 S.W.2d 345 (Mo.App.1979).

## VI. INEFFECTIVE ASSISTANCE OF COUNSEL

Counsel for Father asks that he be found ineffective because he did not file a writ of *habeas corpus ad testificandum.* Such a writ would have enabled Father, although imprisoned, to attend the hearing.

In Missouri, the test for ineffective assistance of counsel in termination of parental rights cases is whether the attorney was effective in providing his or her client with a meaningful hearing based on the record. *In Interest of J.C., Jr.,* 781 S.W.2d 226, 228 (Mo.App.1989). An attorney will not be found to be ineffective based on trial strategy, even if that strategy later proves to be ineffective. *State v. Clay,* 975 S.W.2d 121 (Mo. banc 1998), *citing, State v. Shurn,* 866 S.W.2d 447 (Mo. banc 1993).

Here, we cannot say that counsel was ineffective for not obtaining a writ of *habeas corpus ad testificandum.* Rather, it is evident that counsel's failure to obtain a writ of *habeas corpus ad testificandum* was a part of his trial strategy. More specifically, counsel indicated that Father wanted to be at the hearing, but did not want to appear in handcuffs or prisoner's clothing because he thought that would be detrimental to his cause. For this reason, counsel chose to request a one-month continuance rather than bring Father to the hearing. When the continuance was not granted, counsel did not at any point suggest that, if the case were not continued, he wanted a writ of *habeas corpus ad testificandum* so that his client could appear in handcuffs and prison garb after all. He instead followed his strategy of not making Father appear in prison clothing and handcuffs and proceeded with his case. Moreover, counsel has not identified any additional evidence which Father could have produced had he been present in person, nor shown how Father's presence would have changed the result of the proceeding. Although, in hindsight, counsel may now feel Father should have appeared in person, his chosen strategy was not without basis and did not render his representation ineffective. To the contrary, our review of the transcript shows that counsel actively participated at the hearing and did an effective job of advocating in Father's interest.

For all of these reasons, the judgment is affirmed.

Chief Judge PATRICIA BRECKENRIDGE, Presiding, and Judge VICTOR C. HOWARD, concur.