812 So.2d 551 (2002)
L.W., Father of L.W. and T.W., Minor Children; and R.L.W., Mother of J.P., L.W., T.W., Minor Children, Appellants,
v.
DEPARTMENT OF CHILDREN AND FAMILIES, Appellee.
Nos. 1D01-368, 1D01-369.
District Court of Appeal of Florida, First District.
March 28, 2002.
*552 Deborah A. Schroth of Florida Legal Services, Inc., Jacksonville; Michael R. Yokan, Jacksonville; Tracy Reinman, Legal Intern, for Appellants.
Doris Rompf, Department of Children and Families, Jacksonville, for Appellee.
WEBSTER, J.
In this juvenile dependency case, appellants (the parents of children found to be dependent) seek review of a final order denying their petitions for writs of habeas corpus by which they attempted to challenge the competence of the court-appointed attorney who had represented them. We conclude that the parents were constitutionally entitled to competent court-appointed counsel in the dependency proceeding. Because habeas corpus appears to be the only means by which they can ensure that right is not denied, we conclude, further, that they are entitled to challenge the competence of their appointed counsel by habeas corpus. Accordingly, we reverse, and remand for consideration of the petitions on the merits.

I.
The Department filed a dependency petition alleging that the father had sexually abused his stepdaughter, and that the mother had failed to protect her daughter. It alleged, further, that the parents' two sons were at risk of prospective abuse because of the father's sexual abuse of the stepdaughter and the mother's failure to protect her. The parents denied the allegations, and the trial court appointed an attorney to represent them. An adjudicatory hearing was held, at the end of which the trial court orally found that the allegations had been established by the greater weight of the evidence. On August 9, 1999, the trial court held a disposition hearing. Both parents continued to be represented by the same appointed counsel. At the conclusion of that hearing, the trial court announced that it was adopting the recommendations contained in the predisposition report submitted by the Department, and asked the Department to prepare a final disposition order. For reasons that are not clear from the record, a written disposition order was not signed until November 2, 1999, some five months after the adjudicatory hearing, and three months after the disposition hearing. Among other things, the disposition order directed that the children be placed out of the home (the girl with a relative, and the two boys with a non-relative); that the mother have no contact with her daughter until she had completed a psychological evaluation and her therapist and the daughter's both approved, and only supervised visitation with the two sons; and that the father have no contact with any of the children until he had completed a psychosexual evaluation and recommended therapy and his therapist and the stepdaughter's both approved.
In February 2000, the mother secured the services of a different attorney. A judicial review hearing was held on February 17, 2000. The mother was represented by new counsel, but the father continued to be represented by the original court-appointed attorney. Over the mother's objection, *553 her daughter was placed in the custody of an adult sister and Department supervision was terminated. In addition, the mother's request that the two boys be returned to her or, alternatively, that she receive extended unsupervised visitation was denied pending evaluations of the boys. Following a hearing in August 2000 at which the Department contested the mother's request that the two boys be returned to her, the trial court entered an order granting that request. The father remained unable to have contact with any of the children, and the mother remained unable to have any contact with her daughter. On November 3, 2000, the mother and the father (now also represented by new counsel) filed petitions requesting the trial court to set aside the orders of adjudication and disposition on account of the incompetence of their original appointed attorney. The relief was sought pursuant to Florida Rule of Juvenile Procedure 8.270(b)(1) or, in the alternative, by a writ of habeas corpus.
In their petitions (which are substantively identical), the parents alleged that the father had been charged with sexual battery, and remained incarcerated from January 25, 1999, until February 2000, when he was acquitted following a jury trial; and that the mother had been charged with sexual battery, child abuse and child neglect, and remained incarcerated from February 2, 1999, until August 1999, when the charges against her were dropped. They asserted that they were constitutionally entitled to representation by competent court-appointed counsel in the dependency proceeding, and that they were denied due process of law because their court-appointed counsel had not competently represented them, to their prejudice. More particularly, they alleged that counsel had been ineffective because he (1) never raised the possibility of a conflict of interest arising out of his representation of both of them; (2) failed to depose the stepdaughter, who was the sole witness regarding the dependency allegations; (3) failed to view the videotape of the interview of the stepdaughter conducted by the Child Protection Team; (4) failed to depose any other potential witness, or otherwise to conduct any discovery; (5) failed to request a continuance pending resolution of the criminal charges so that they might testify on their own behalf; (6) failed to request that the proceeding be reopened after the charges against the mother had been dropped and the father had been acquitted; (7) failed to object to inadmissible hearsay testimony presented by the Department at the adjudicatory hearing; (8) actually elicited damaging inadmissible hearsay testimony from the stepdaughter's therapist; (9) failed to object to inadmissible hearsay testimony presented by the guardian ad litem; (10) failed to object, or to propose alternatives, to the guardian ad litem's request for in camera examination of the stepdaughter by the trial court out of his presence and their presence; and (11) failed to present any evidence or legal argument in opposition to the allegations regarding the two boys. They alleged that they had been prejudiced because appointed counsel failed to point out that the Department had presented no evidence as to the allegations regarding the two boys, causing both parents to lose custody of the boys for more than a year and subjecting the family to continuing supervision by the Department; and because he had missed "glaring discrepancies" in prior statements made by the stepdaughter. They alleged, further, that, had counsel provided competent assistance, "it is likely that the ultimate outcome of the adjudicatory trial would have been different." They requested an evidentiary hearing at which *554 they might be afforded an opportunity to prove their allegations.
Following oral argument directed to the question of whether either of the remedies requested would be available assuming that the allegations were true, the trial court entered the order which is the subject of this appeal, summarily denying the petitions on the ground that, as a matter of law, neither of the remedies requested is available. On appeal, the parents argue only that it was error to hold that, as a matter of law, they were not entitled to challenge their appointed counsel's alleged incompetence by habeas corpus. They do not challenge that portion of the trial court's ruling that addressed the applicability of Florida Rule of Juvenile Procedure 8.270(b)(1).

II.
Recognizing the constitutionally protected fundamental liberty interest of parents to raise their children "free from the heavy hand of government paternalism," see Padgett v. Dep't of Health & Rehab. Servs., 577 So.2d 565, 570 (Fla.1991), our supreme court has held "that counsel is necessarily required under the due process clause of the ... Florida Constitution[], in [dependency] proceedings involving the permanent termination of parental rights to a child, or when the proceedings, because of their nature, may lead to criminal child abuse charges." In the Interest of D.B., 385 So.2d 83, 90 (Fla.1980). Likewise acknowledging the importance of the interests at stake, the legislature has extended the right to counsel to indigent parents in all dependency proceedings. See § 39.013(1) & (8)(a), Fla. Stat. (1999). It is undisputed that, because both parents faced felony criminal charges involving allegations of child abuse and neglect, they were constitutionally entitled to court-appointed counsel in the dependency proceeding.

A.
We have previously held that, in dependency proceedings implicating the possible permanent termination of parental rights, the right to court-appointed counsel necessarily implies that such counsel provide competent assistance. In the Interest of M.R., 565 So.2d 371 (Fla. 1st DCA 1990). Our holding there is consistent with the position taken by the overwhelming majority of other jurisdictions, which hold that a parent's right to court-appointed counsel in termination of parental rights proceedings must include the right to effective assistance of counsel because, otherwise, the right to counsel would be an empty formality. See, e.g., Ex parte E.D., 777 So.2d 113, 115 (Ala.2000); State v. Anonymous, 179 Conn. 155, 425 A.2d 939, 942-43 (1979); In Interest of A.H.P., 232 Ga.App. 330, 500 S.E.2d 418, 421-22 (1998); J.T. v. Marion County Office of Family & Children, 740 N.E.2d 1261, 1265 (Ind.Ct.App.2000); In Interest of J.C., Jr., 781 S.W.2d 226 (Mo.Ct.App. 1989) (and cases cited therein); N.J. Div. of Youth & Family Servs. v. V.K., 236 N.J.Super. 243, 565 A.2d 706, 712 (1989); Matter of Termination of Parental Rights of James W.H., 115 N.M. 256, 849 P.2d 1079, 1082 (N.M.Ct.App.1993); Jones v. Lucas County Children Servs. Bd., 46 Ohio App.3d 85, 546 N.E.2d 471, 473 (Ohio Ct.App.1988); In re K.L.C., 12 P.3d 478, 480-81 (Okla.Civ.App.2000); State ex. rel. Juvenile Dep't of Multnomah County v. Geist, 310 Or. 176, 796 P.2d 1193, 1201-03 (1990); State in Interest of E.H. v. A.H., 880 P.2d 11, 13 (Utah Ct.App.1994); In Interest of M.D.(S.), 168 Wis.2d 995, 485 N.W.2d 52, 55 (1992). But see In re Interest of Azia B., 10 Neb.App. 124, 626 N.W.2d 602, 612 (2001) (the right to effective assistance of counsel is limited to *555 criminal prosecutions and does not extend to termination proceedings, which are civil in nature, and designed to protect children rather than prosecute parents).
The Department concedes that the parents' contention that a parent who is constitutionally entitled to court-appointed counsel must also be entitled to competent assistance of counsel "is well-taken." However, it correctly notes that no Florida court has addressed this issue as it relates to dependency proceedings other than those implicating the possible permanent termination of parental rights. Our research has revealed that California, Illinois, Massachusetts, New York and Pennsylvania have addressed whether parents in dependency proceedings generally are entitled to effective assistance of appointed counsel. Four of them have held categorically that the right to counsel in dependency proceedings necessarily includes the right to effective assistance of counsel. See, e.g., In the Interest of D.M., 258 Ill. App.3d 669, 197 Ill.Dec. 338, 631 N.E.2d 341, 344 (1994); In re Stephen, 401 Mass. 144, 514 N.E.2d 1087, 1091 (1987); In the Matter of Erin G., 139 A.D.2d 737, 527 N.Y.S.2d 488, 490 (N.Y.App.Div.1988); In the Matter of J.P., 393 Pa.Super. 1, 573 A.2d 1057 (1990) (en banc). In California, the courts had been divided as to whether the right to effective assistance of counsel in dependency proceedings extended to parents whose right to counsel was based solely on statute, rather than constitutional due process. In re Kristin H., 46 Cal. App.4th 1635, 54 Cal.Rptr.2d 722, 736-41 (1996), and cases cited therein. However, after the California Legislature enacted a statute providing that "[a]ll parties who are represented by counsel at dependency proceedings shall be entitled to competent counsel," California courts have held that parents with a statutory right to counsel also have a right to effective assistance of counsel. Id. at 737-38.
Although no Florida court has previously addressed this precise issue, it seems to us that logic and common sense compel the conclusion that, if a parent's constitutional right to court-appointed counsel in appropriate dependency proceedings is to consist of something more than a meaningless formality, that right must include the right to effective assistance by the attorney who is appointed. While dependency proceedings do not always include a threat of imminent termination of parental rights, there is frequently a substantial possibility that the parent may lose custody of the child, or be separated from the child for a significant period. In fact, that is precisely what happened here. The mother was allowed only supervised visitation with her two sons for some 19 months, and has had no contact with her daughter for three years; and the father has had no contact with any of the children for three years. Moreover, because dependency proceedings are frequently the first step on the road to termination of parental rights, a parent who is unable to present an effective defense from the outset may be at a serious disadvantage later. See, e.g., Wofford v. Eid, 671 So.2d 859 (Fla. 4th DCA 1996) (noting that findings resulting from the dependency proceeding frequently form the basis for a subsequent petition requesting termination of parental rights). Finally, while the child's interests are paramount in dependency proceedings, see B.B. v. Dep't of Children & Family Servs., 731 So.2d 30, 34 (Fla. 4th DCA 1999), those interests are not furthered if ineffective assistance on the part of the parents' appointed counsel results in an erroneous finding of dependency. Accordingly, we conclude that a parent's constitutional right to the assistance of court-appointed counsel in a dependency proceeding necessarily includes the right to effective assistance by the attorney who is appointed.

*556 B.
Having concluded that the parents had the right to effective assistance by their appointed counsel, we must next address the standard to be used for determining whether counsel was effective, an issue we did not attempt to answer in M.R. A survey of other jurisdictions reveals that the vast majority have applied the standard used in criminal cases. See, e.g., People in Interest of V.M.R., 768 P.2d 1268, 1270 (Colo.Ct.App.1989); Anonymous, 425 A.2d at 942-43; A.H.P., 500 S.E.2d at 421-22; In re R.G., 165 Ill. App.3d 112, 116 Ill.Dec. 69, 518 N.E.2d 691, 700-01 (1988); J.T., 740 N.E.2d at 1265; In Interest of J.P.B., 419 N.W.2d 387, 390 (Iowa 1988); In Interest of Rushing, 9 Kan.App.2d 541, 684 P.2d 445, 449-50 (1984); Stephen, 514 N.E.2d at 1091; Matter of Trowbridge, 155 Mich.App. 785, 401 N.W.2d 65, 66 (1986); Matter of Bishop, 92 N.C.App. 662, 375 S.E.2d 676, 678-79 (1989); V.K., 565 A.2d at 712; Jones, 546 N.E.2d at 473; K.L.C., 12 P.3d at 480-81; A.H., 880 P.2d at 13; M.D.(S.), 485 N.W.2d at 55. In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court announced a two-part test for establishing ineffectiveness of counsel in criminal cases: (1) counsel's performance must be deficienti.e., counsel's performance must fall outside the broad range of professionally acceptable performance; and (2) counsel's deficient performance must prejudice the defensei.e., there must be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.
Pennsylvania courts have adopted a modified version of the Strickland test in dependency proceedings, pursuant to which the parent "must make a strong showing of ineffectiveness of counsel," which requires the parent to "come forward with evidence that indicates to a high degree of likelihood that but for an unprofessional error on the part of counsel, the child would not have been found to be dependent." In re S.M., 418 Pa.Super. 359, 614 A.2d 312, 316 (1992) (emphasis in original). Courts in Missouri and Washington have declined to adopt the criminal standard for ineffective assistance of counsel, opting, instead, for a civil standard which requires the parent to show that counsel "was not effective in providing a meaningful hearing." J.C., Jr., 781 S.W.2d at 228; In re Dependency of Moseley, 34 Wash.App. 179, 660 P.2d 315, 318 (1983). Similarly, Oregon has used the civil standard of "fundamental fairness," under which the parent "must show, not only that [the parent's] trial counsel was inadequate, but also that any inadequacy prejudiced [the parent's] cause to the extent that [the parent] was denied a fair trial and, therefore, that the justice of the circuit court's decision is called into serious question." Geist, 796 P.2d at 1203-04. It is not clear to us how these civil standards of ineffective assistance of counsel differ in practice from the criminal standard announced in Strickland. Because the Strickland standard is well-established and fairly straightforward and places a sufficiently high burden on the movant to prove ineffective assistance of counsel, we conclude that it is the standard that should apply in dependency cases such as this. Thus, when alleging ineffective assistance of appointed counsel in a dependency proceeding, the parent must establish that counsel's performance was deficient and that the deficient performance prejudiced the parent i.e., that there is a reasonable probability that the child would not have been found dependent absent counsel's deficient performance. This should be an easier determination to make in a dependency proceeding because the court, rather than a *557 jury, is the fact-finder at the adjudicatory hearing.

C.
We must next address the proper procedure to be used by a parent to raise a claim of ineffective assistance of appointed counsel in a dependency proceeding. The Department argues that such a claim should be permitted to be raised only on direct appeal from the adjudication of dependency and disposition. At least two other jurisdictions have so held. Geist, 796 P.2d at 1201-03; In re S.W., 781 A.2d 1247 (Pa.Super.Ct.2001). However, we do not believe that such a procedure would afford meaningful review. In the first place, most direct appeals in dependency proceedings are handled by the same attorney who represented the parent in the trial court. Moreover, review would be precluded in many, if not most, cases because the record would not be sufficiently developed. This is precisely why Florida courts have developed the general rule that, in criminal cases, ineffective assistance of counsel claims may not be raised on direct appeal. See, e.g., McKinney v. State, 579 So.2d 80, 82 (Fla.1991); Dennis v. State, 696 So.2d 1280, 1282 (Fla. 4th DCA 1997); Loren v. State, 601 So.2d 271, 272 (Fla. 1st DCA 1992).
Another possible method by which to raise such a claim might be by a motion pursuant to Florida Rule of Juvenile Procedure 8.270(b), which is substantively identical to Florida Rule of Civil Procedure 1.540(b). However, we believe that the trial court correctly concluded that rule 8.270(b) was not designed to allow the presentation of such a claim.
Historically, habeas corpus was recognized as an acceptable means by which to challenge the effectiveness of counsel in criminal cases. See, e.g., Roy v. Wainwright, 151 So.2d 825 (Fla.1963) (noting that habeas corpus was no longer an appropriate means by which to challenge the effectiveness of trial counsel in criminal cases in light of the adoption of Criminal Procedure Rule No. 1); Baggett v. Wainwright, 229 So.2d 239 (Fla.1970) (approving habeas corpus as an appropriate means by which to challenge the effectiveness of appellate counsel). It has since been supplanted by Florida Rule of Criminal Procedure 3.850 as to claims alleging that trial counsel was ineffective, and by Florida Rule of Appellate Procedure 9.141(c) as to claims alleging that appellate counsel was ineffective.
"[H]abeas corpus has [also] been authorized as a remedy for ascertaining a parent's right to custody of his or her children." In the Interest of E.H., 609 So.2d 1289, 1291 (Fla.1992). In fact, in E.H., the supreme court held that the proper method by which to seek a belated appeal in a termination of parental rights case based on appointed counsel's failure timely to file a notice of appeal was a petition for habeas corpus filed in the trial court. Id. at 1290-91.
We conclude that, at present, the only available method by which a parent in a dependency case may challenge the effectiveness of appointed counsel is a petition seeking a writ of habeas corpus, filed in the trial court. We conclude, further that, because of the importance of the interests of the parents and the children, such a petition must be filed without unreasonable delay. The doctrine of laches is available to bar such a petition when there has been an unreasonable delay in raising the claim. See generally McCray v. State, 699 So.2d 1366, 1368 (Fla.1997) (noting that, in collateral criminal proceedings, "the doctrine of laches has been applied to bar a... proceeding when, from the face of the petition, it is obvious that the state has been manifestly prejudiced and no reason *558 for an extraordinary delay has been provided"). As one California court has noted, the child's interest "is undoubtedly a compelling consideration in those cases where parental rights have been terminated and the child has been placed for adoption, or where the decision on permanent placement will be unreasonably delayed, resulting in prolonged uncertainty for the child. In such cases the point may have been reached `at which the interests of the child and parent collide, and at which the child's interest in finality prevails.'" Kristin H., 54 Cal.Rptr.2d at 738-39 (citations omitted). There is, however, nothing to suggest that such a point has been reached in this case.

III.
For the reasons expressed in this opinion, we hold that the trial court should have held an evidentiary hearing, and then ruled on the merits of appellants' petitions seeking writs of habeas corpus. Accordingly, we reverse, and remand for further proceedings consistent with this opinion. Because of the significance of the issues addressed, we also certify to the supreme court the following questions, which we believe to be of great public importance:
I. ARE PARENTS WHO ARE CONSTITUTIONALLY ENTITLED TO COURT-APPOINTED COUNSEL IN DEPENDENCY PROCEEDINGS ALSO ENTITLED TO COMPETENT ASSISTANCE OF COUNSEL?
II. IF THE ANSWER TO THE PRECEDING QUESTION IS "YES," IS A PETITION FILED IN THE TRIAL COURT SEEKING A WRIT OF HABEAS CORPUS A PROPER PROCEDURE BY WHICH TO RAISE A CLAIM THAT A PARENT DID NOT RECEIVE COMPETENT ASSISTANCE FROM APPOINTED COUNSEL?
Finally, we urge the Juvenile Court Rules Committee of The Florida Bar to consider drafting, and proposing to the supreme court for adoption, a rule to address the procedure by which a parent might challenge the effectiveness of representation by appointed counsel in a dependency proceeding.
REVERSED and REMANDED, with directions.
BROWNING, J., concurs; WOLF, J., concurs with written opinion.
WOLF, J., concurring.
The majority properly finds that the parents in the present dependency proceeding were entitled to effective assistance of counsel and that at present the only mechanism for raising the claim is habeas corpus. I also concur with the majority's decision to certify two questions of great public importance as well as the decision to urge the court to refer the matter to the Juvenile Court Rules Committee.
I disagree, however, with the majority in their apparent endorsement of the following: 1) adoption of the criminal standard of ineffectiveness of counsel in dependency proceedings, 2) creation of a separate collateral proceeding to determine effectiveness of counsel, and 3) utilization of the doctrine of laches as the means for determining when a parent must raise the issue of ineffectiveness of trial counsel.
There are two important distinctions between the parent's right to counsel in dependency proceedings and the defendant's right to counsel in a criminal proceeding: The first concerns the nature of the constitutional right, and the second concerns the overriding focus of dependency proceedingsthe protection of the child.
It is important to note, the supreme court has recognized that while the right *559 to counsel in criminal cases flows principally from the sixth amendment, "[r]ight to counsel in dependency proceedings, on the other hand, is governed by due process considerations, rather than the sixth amendment." In Interest of D.B., 385 So.2d 83, 89 (Fla.1980). Thus, it would appear that we are not constrained by the formal standards and requirements mandated in the criminal context by Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). See M.W. v. Davis, 756 So.2d 90, 97 (Fla.2000)(recognizing that the extent of due process varies with the character of the interest and the nature of the proceeding involved).
While the constitutionally protected interest in preserving the family is a fundamental right which may require counsel, "[d]ependency proceedings exist to protect and care for the child that has been neglected, abused, or abandoned." In Interest of D.B., 385 So.2d at 90. Thus, unlike criminal proceedings where a paramount interest is protecting the rights of the accused, including the right to counsel, dependency and termination cases have paramount interests other than the parent's right to counsel.
Notwithstanding the paramount interests of the child, the majority concludes that the criminal standard for effectiveness of counsel as well as the procedures utilized in those cases are appropriate in dependency cases because they are "well established and fairly straightforward," and they place a high evidentiary burden on proving ineffective assistance of counsel. Therefore, the majority urges that the criminal model should be applied in dependency cases. While I agree that the vast majority of ineffectiveness of counsel claims are ultimately denied because of the heavy burden, the process is anything but straightforward. A skillful pleader can almost always get an evidentiary hearing. Many claims are not resolved until years after the initial determination of guilt has been made. Such lack of finality and uncertainty is unacceptable in the dependency context. A child who has been placed in foster care pursuant to a dependency proceeding (or permanently placed after a termination of parental rights) should not have to face potential disruption years after the dependency decision has been made. The Supreme Court of Pennsylvania in Matter of J.P., 393 Pa.Super. 1, 573 A.2d 1057 (1990), discussed the different timing consideration in proceedings involving juveniles:
Most significantly in a catalogue of differences between the criminal and juvenile proceedings is the different time frame applicable to the cases. Adult cases move far more slowly and procedural delays do not work the same hardship on adults as they do with children. In Lehman [v. Lycoming County Children's Services, 458 U.S. 502, 102 S.Ct. 3231, 73 L.Ed.2d 928 (1982) ], in denying habeas corpus jurisdiction in the federal courts, the Supreme Court dealt specifically with the harm engendered by delay in a child dependency proceeding.
The states [sic] interest in finality is unusually strong in child-custody disputes. The grant of federal habeas would prolong uncertainty for children such as the Lehmans' sons, possibly lessening their chance for adoption. It is undisputed that children require secure, stable, long term, continuous relationships with their parents or foster parents. There is little that can be as detrimental to a child's sound development as uncertainty over whether he is to remain in his current "home" under the care of his parents or foster parents, especially when such uncertainty is prolonged. Extended uncertainty would be inevitable in many cases if federal courts *560 had jurisdiction to relitigate custody decisions.
458 U.S. at 513-14, 102 S.Ct. at 3238-39, 73 L.Ed.2d at 938.
The same detriment is clearly applicable to a proceeding, such as that adapted from criminal cases, which would require remand for appointment of new counsel or to hear evidence which might be developed by new counsel on the mere allegation of ineffectiveness of counsel. It is indisputable that such a process would result in a minimal delay of a year in resolving the appellate review and it is highly unlikely the result would be different in the vast majority of the cases. Taking cognizance of previous holdings by this Court, that proceedings held pursuant to alleged violations of the Juvenile Act cannot serve the functions of a proceeding held pursuant to alleged violations of the Crimes Code, In Interest of Leonardo, 291 Pa.Super. 644, 436 A.2d 685 (1981), we must achieve a review of the claim of ineffectiveness of counsel without permitting such a review to impede the juvenile adjudication and disposition process unless it is clearly in the interest of justice.
In the Matter of J.P., 393 Pa.Super. at 15-16, 573 A.2d at 1064-65. See also Lumbis v. Texas Dept. of Protective and Regulatory Services, 65 S.W.3d 844 (Tex.App.-Austin 2002) (holding that parents involved in termination proceedings were not entitled to the same guarantee of effective counsel afforded to a defendant in a criminal case).
A Missouri appellate court defined the standard of effectiveness review in termination of parental rights cases as "whether the attorney was effective in providing his or her client with a meaningful hearing based on the record." In re I.B., 48 S.W.3d 91, 99 (Mo.App. W.D.2001) (quoting In re M.P.W., 983 S.W.2d 593, 600 (Mo.App. W.D.1999)). In In re Nicholas "GG", 285 A.D.2d 678, 679, 726 N.Y.S.2d 802, 804 (N.Y.A.D. 3 Dept.2001), a New York appellate court in a termination of parental rights case said in determining ineffectiveness, "it was incumbent upon respondent to demonstrateon the record before usboth that she was deprived of meaningful representation and that counsel's deficiencies caused her to suffer actual prejudice." Our very own court has said that in reviewing a termination of parental rights case we must look at whether counsel provided "meaningful assistance." In Interest of M.R., 565 So.2d 371, 372 (Fla. 1st DCA 1990).
Florida should consider adoption of a review standard and procedures like New York and Missouri, which protect the rights of the parents but also recognize the need of the child for finality of the proceedings. One possible alternative is to require ineffectiveness claims to be raised in the initial appellate proceeding.
The majority correctly points out that we provide for collateral proceedings rather than just appellate review in the criminal context. Indeed, I agree; appellate review does not provide a sufficient record to conduct the ineffectiveness review mandated by Strickland. In termination and dependency cases, however, the question of whether the parents had a fair hearing and meaningful representation (as required by due process) can, in the vast majority of cases, be determined by the record. The interests of the child in finality in all dependency cases should outweigh the interests of the parents in those few cases where meaningful representation can only be determined by collateral proceedings. Due process requires a reasonable approach based upon all the circumstances; it does not require perfection.
Should the supreme court determine that collateral proceedings are necessary *561 in the context of dependency and termination cases, strict time limitations on raising the issue should be adopted. See Ex parte E.D., 777 So.2d 113 (Ala.2000) (Alabama has a 60 day time limitation on filing ineffective assistance of counsel claims). The two year limitation for filing ineffective assistance of counsel claims under the criminal rules is far too long for dependency and termination cases. The doctrine of laches, which places a heavy burden on the party asserting it, also does not provide reasonable protection for the child who is about to face another potential major disruption in his or her life.
Whether these issues concerning effective assistance of counsel in dependency cases are addressed by the supreme court or a rules committee of the Florida Bar, the special interests involved in dependency and termination proceedings should be weighed carefully rather than just blindly accepting the familiar criminal model.