IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

J.B., MOTHER OF: D.L.,
MINOR CHILD,

      Appellant,

v.

DEPARTMENT OF CHILDREN
AND FAMILIES,

      Appellee.

_____/

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D13-4346

Opinion filed October 7, 2014.

An appeal from the Circuit Court for Leon County.
Karen A. Gievers, Judge.

Mike Donovan of Legal Services of North Florida, Inc., Tallahassee, for Appellant.

Dwight O. Slater, Appellate Counsel, Tallahassee, for Appellee.

SWANSON, J.

      In this direct appeal from the final judgment terminating her parental rights, the mother, J.B., claims she was denied the effective assistance of counsel during the proceedings below. Because we conclude the mother cannot demonstrate on the face of the record that trial counsel was ineffective, we affirm. However, we

certify two questions of great public importance regarding the proper standard for determining ineffective assistance of counsel claims as well as the procedure for raising such claims in termination cases.

## I.

On March 14, 2011, the Department of Children and Families removed the child, D.L, from the mother's custody based on allegations the mother was abusing illegal drugs, had been living in a "crack house" followed by a homeless shelter, and was currently in jail for violating her probation. On April 1, 2011, the Department filed a dependency petition alleging the mother violated a safety plan, was unstable, allowed the child to frequent unsafe locations, and left the child with strangers at the homeless shelter. On June 22, 2011, the trial court adjudicated the child dependent based on the mother's consent. On July 13, 2011, the trial court accepted a case plan with the goal of reunification.

On February 10, 2012, the Department filed a petition for termination of parental rights. The petition alleged the mother abandoned the child by failing to provide for him financially or emotionally and failing to exercise her parental duties and responsibilities. The petition further alleged the mother failed to substantially comply with the case plan within a nine-month time period in that she failed to complete an in-patient drug treatment program, complete a parenting course, follow all recommendations of a parenting evaluation, follow all

recommendations of a psychiatric evaluation, undergo random urinalysis and a hair follicle test, participate in a General Equivalency Diploma (GED) program, maintain stable housing, maintain verifiable income, and maintain contact with the dependency case manager.

On July 18, 2013, the mother's counsel filed a motion for continuance on the ground "[t]hat the purported father ha[d] yet to be tested." The adjudicatory hearing was held the following day. After the trial court read the motion for continuance and heard argument from counsel, the following exchange ensued:

> THE COURT: [Counsel], your motion for continuance is denied. It was not timely. It is not proper in form. And it does not show good cause sufficient to override the statutory mandates regarding the child's right to permanency.
> [MOTHER'S COUNSEL]: Yes, Your Honor.
> THE COURT: Do you want opening statements?
> [MOTHER'S COUNSEL]: No, Your Honor. I'm not prepared to go forward in that case. I was under the impression that things would have been different, but something changed.
> THE COURT: Well, regardless, we have been scheduled for this trial for quite a while. And the Court knows that you're a competent attorney. Let's go forward.
> . . . .
> If at some point, [counsel], after all this time to prepare for this trial, there's a particular additional thing or person that you think you need to have put in evidence or call as a witness, you can go ahead and identify that for the record. The Court notes you didn't file your—or send in your motion for continuance until—it's signed on July 18th. Today is July 19th.

3

> The Court is confident that as experienced and competent an attorney as you are, that you would have been ready to go forward and would have filed a motion for continuance a lot sooner if there were any particular inability on your part to be effective.

After stating that he was "really exhausted" and that "the last few weeks ha[d] worn [him] down," the mother's counsel asserted in his opening statement that the mother had complied with most of her case plan and any failures by the mother were attributable to the Department, which failed to prepare the mother for life as an adult when the mother herself was a foster child in the Department's custody.

During the Department's case-in-chief, Ashley Birdshaw, a child protective investigator, testified that she investigated allegations in the initial child abuse report in January 2011, determined that the mother did not have stable housing, learned from the mother that she had lived in a crack house in Gainesville before coming to Tallahassee, and had the child sheltered after the mother was arrested in March 2011. During the mother's cross-examination, Birdshaw acknowledged knowing that the mother was a former foster child, but disagreed with the characterization of the mother's counsel that Birdshaw "left a minor on the streets with a child." The Department requested the trial court take judicial notice that the mother was born on October 15, 1992, establishing the mother was eighteen years old during Birdshaw's investigation. The trial court denied the request after the mother's counsel objected in the absence of the Department producing a copy of

4

the mother's birth certificate. Later, the trial court received into evidence, without objection, the child's birth certificate, which listed the mother's date of birth as October 15, 1992.

Bethanie Milford, the dependency case manager, testified the mother failed to substantially comply with her case plan tasks, which included completing the Sisters in Sobriety program. Milford further testified that she called the program and was told the mother was not in compliance and "just left." Although conceding the mother was good for the most part in her visitation with the child when she was not incarcerated, Milford testified the mother disappeared in December 2012 or January 2013 and that she got a call from the mother's former foster parents that the mother had been arrested for prostitution in Georgia. Milford also testified that the mother currently lived at a halfway house after getting out of jail and that the director indicated children were not allowed to be there. During Milford's testimony, the trial court took judicial notice of several previous judicial reviews without objection.

Dr. Carole Oseroff, a board-certified child and adolescent psychologist, testified she first came into contact with the mother when she was twelve years old and performed two psychological assessments and two parenting assessments of the mother in the period from 2005 to 2012. Dr. Oseroff diagnosed the mother, whose intellectual function fell squarely in the average range, with attention

5

deficit-hyperactivity disorder, posttraumatic stress disorder, and antisocial personality disorder with features of borderline personality disorder. She concluded it was unlikely that the mother would be able to make the changes necessary to safely reunify her with the child in the near future and that strong consideration needed to be given to termination of the mother's parental rights. On cross-examination, Dr. Oseroff conceded the Department did not effectively treat the mother's issues while she was a child in foster care.

Cloteal Tanner, the child's therapist, testified that she noticed the child stopped progressing in therapy and his behavior changed after the child's foster mother reported that the child had resumed visitations with his mother. The child's foster mother testified she and her husband were interested in adopting the child, who became upset and had nightmares after seeing the mother. Stephanie Morse, the child's guardian ad litem, testified the child had developed a parent-child relationship with his foster parents, the mother was unable to give the child the stability and permanence he needed, and she recommended the termination of the mother's parental rights. A copy of Morse's report, which had been received by all the parties, was provided to the court without objection.

At the conclusion of the Department's case, the mother's counsel did not move for a judgment of dismissal. During the mother's case, the Department objected to the mother presenting testimony from her former foster parents because

6

the mother's counsel never filed a witness list. The mother's counsel replied that he had not filed a witness list because he was under the impression that the Department had consented to continue the case. The court overruled the objection and allowed both witnesses to testify. Although the mother submitted her own witness list identifying Cassie Hemmick and Lorie Asifor as additional witnesses, the mother indicated that Asifor could be excused. The mother's counsel then indicated he advised the mother that it was not in her best interest to call Hemmick as a witness. After discussing the matter further with her counsel, the mother agreed not to call Hemmick. The mother's counsel then called Sharon Ross-Donaldson, who was the mother's therapist. Finally, the mother testified on her own behalf. During cross-examination, the mother testified she was never asked if any family members could care for the child and told the case manager that family members were available. The mother's counsel did not pursue this further on redirect examination.

During closing arguments, the mother's counsel again argued the mother's problems stemmed from the Department's own failure to effectively help her while she was a child in foster care. Counsel then argued the Department did not provide a qualified case manager for the mother, who had mental health issues, as required by chapter 39, Florida Statutes. When the court asked counsel for the applicable statute, counsel responded that he did not have a statute book with him. The trial

court then provided one to counsel, who responded, "Of course, I may be so—I'm so tired, I may be doing everything, again, wrong, but I believe that that is—" The Department's counsel attempted to assist the mother's counsel in finding the statute. After the trial court called a recess so that counsel could review the statute suggested by the Department's counsel, the mother's counsel stated, "Yes. The statute she has pointed to is not the one I was thinking of. It may have changed. I've been doing this so dadgum long, I've been at this—put in 80 hours this week already, I can't think straight, so I withdraw that part of it."

On August 9, 2013, the trial court entered a final judgment terminating parental rights. Specifically, the court found by clear and convincing evidence that the mother abandoned and neglected the child by failing to substantially comply with her case plan tasks during the child's foster placement. In addition, the court found that termination was the least restrictive means of protecting the child from harm. Finally, the court found by clear and convincing evidence that it was in the manifest best interest of the child to terminate parental rights. This appeal followed.

## II.

Florida's constitutional due process clause creates a right to appointed counsel in proceedings that may result in the termination of parental rights. In Interest of D.B., 385 So. 2d 83, 90-91 (Fla. 1980); E.T. v. State, Dep't of Children

8

& Families, 930 So. 2d 721, 725 (Fla. 4th DCA 2006). The constitutional right to counsel in termination proceedings implicitly requires the effective assistance of counsel. In re E.K., 33 So. 3d 125, 127 (Fla. 2d DCA 2010); E.T., 930 So. 2d at 726. Any attack on the effectiveness of counsel in termination proceedings must come in the form of a direct appeal or an authorized post-trial motion. Id. at 728. However, a claim of ineffective assistance of counsel cannot be raised for the first time on appeal unless counsel's ineffectiveness is apparent on the face of the record. E.K., 33 So. 3d at 125; L.H. v. Dep't of Children & Families, 995 So. 2d 583, 584-85 (Fla. 5th DCA 2008). In the only Florida appellate decision to address the standard applicable to ineffective assistance of counsel claims in proceedings that may result in the termination of parental rights, we adopted the criminal standard of ineffective assistance of counsel announced in Strickland v. Washington, 466 U.S. 668 (1984). L.W. v. Dep't of Children & Families, 812 So. 2d 551, 556 (Fla. 1st DCA 2002). Although L.W. involved dependency proceedings and was disapproved of on other grounds by our supreme court in S.B. v. Dep't of Children & Families, 851 So. 2d 689 (Fla. 2003), we adhere to our prior decision by holding the Strickland standard applies to claims of ineffective assistance of counsel in termination proceedings. Thus, in order to establish ineffective assistance of counsel, the parent must establish that counsel's performance was deficient and prejudiced the parent, i.e., there is a reasonable

9

probability that parental rights would not have been terminated absent counsel's deficient performance.

For the first time on appeal, the mother claims she was denied the effective assistance of counsel during the proceedings to terminate her parental rights. Specifically, she claims her counsel was ineffective for (1) filing an untimely motion for a continuance to investigate prospective fathers; (2) admitting he was exhausted and not prepared to go forward during opening statements; (3) erroneously believing the mother was still a minor when the child was sheltered; (4) allowing the introduction of hearsay in the form of previous judicial reviews and testimony concerning the mother leaving a sobriety program and being arrested for prostitution in Georgia, the child not being allowed to live with the mother at a halfway house, and the child's behavior changing after he resumed visitation with the mother; (5) failing to file a witness list and opposing the mother calling a witness on the ground it was not in the mother's best interest; (6) failure to cross-examine the guardian ad litem or object to the guardian's report on timeliness and hearsay grounds; (7) failing to move for a judgment of dismissal at the conclusion of the Department's case; (8) failing to pursue on redirect examination the mother's claim that a relative placement was available for the child; (9) misleading the court during closing argument that the Department did not provide a qualified case manager for the mother, who had mental health issues; and

10

(10) failing to object to the trial court's failure to inform the mother of the availability of advocacy services under section 39.502, Florida Statutes (2011).

Although we are concerned the trial court chose to go forward with the adjudicatory hearing despite the repeated protestations of the mother's counsel that he was exhausted and not prepared to proceed with the hearing, we agree with the Department that the mother cannot demonstrate counsel's ineffectiveness under the Strickland standard.  Specifically, the face of the record fails to show that (1) good cause existed for a continuance to investigate prospective fathers, which was not material to the allegations against the mother; (2) the mother was prejudiced by her counsel's opening statement, which appeared to reflect a tactical strategy to convince the court that the mother's failures were attributable to the Department; (3) the mother was prejudiced by counsel's belief that the mother was a minor in March 2011 when, in fact, she turned eighteen four months earlier; (4) no tactical explanation existed for counsel's failure to object to the admission of hearsay evidence, much of which was cumulative to other nonhearsay evidence; (5) the mother was prejudiced by counsel's failure to file a witness list, which did not prevent the mother from calling her witnesses, or by counsel's opposition to calling one particular witness, who the mother agreed to drop after further discussing the matter with counsel; (6) no tactical explanation existed for counsel's failure to cross-examine the guardian ad litem or object to her report, portions of which were

11

favorable to the mother; (7) counsel could have successfully argued in favor of a motion for judgment of dismissal; (8) a specific relative placement was available for the child; (9) the mother was prejudiced by her counsel's closing argument, which reiterated that the mother's failures were attributable to the Department; or (10) the mother was prejudiced by the failure to inform her of advocacy services where the mother consented to the dependency adjudication and failed to avail herself of the services offered by the Department. In short, the mother has failed to establish that "the ineffectiveness is obvious on the face of the appellate record, the prejudice caused by the conduct is indisputable, and a tactical explanation for the conduct is inconceivable." Corzo v. State, 806 So. 2d 642, 645 (Fla. 2d DCA 2002).

## III.

Notwithstanding our decision to affirm, we join our sister courts in expressing concern regarding the lack of any effective procedure for raising ineffective assistance of counsel claims in termination proceedings where the alleged ineffectiveness is not apparent on the face of the record. See E.K., 33 So. 3d at 127; L.H., 995 So. 2d at 584-85; E.T., 930 So. 2d at 728-29. In most cases, the record is not sufficiently developed to establish ineffective assistance claims on direct appeal, and our rules do not contain procedures for remanding to the trial court for additional factfinding. See E.K., 33 So. 3d at 127-28; L.H., 995 So. 2d at

584-85; <u>E.T.</u>, 930 So. 2d at 728 n. 4. To the extent such claims could be raised before the trial court in a timely motion for rehearing pursuant to Florida Rule of Juvenile Procedure 8.265, it is very unlikely trial counsel would file a motion challenging his or her own effectiveness. Moreover, attempts to raise ineffective assistance claims in a motion for relief from judgment pursuant to Florida Rule of Juvenile Procedure 8.270 have been rejected as not authorized by the rule. <u>E.K.</u>, 33 So. 3d at 126-27. Finally, the possibility of raising such claims in a petition for writ of habeas corpus has been rejected by the Fourth District Court of Appeal. <u>E.T.</u>, 930 So. 2d at 727-29. At oral argument in this case, both parties agreed that habeas corpus would be too time-consuming to be an effective mechanism for collaterally attacking the effective assistance of counsel in termination proceedings.

Therefore, it would appear that a new procedural mechanism is required. One commentator has suggested the adoption of a rule similar to Florida Rule of Criminal Procedure 3.800(b)(2), which permits a defendant to file a motion to correct sentencing error in the trial court at any time before the filing of the defendant's initial brief on appeal. Anthony C. Musto, <u>Potato, Potahto: Whether Ineffective Assistance or Due Process, an Effective Rule is Overdue in Termination of Parental Rights Cases in Florida</u>, 21 St. Thomas L. Rev. 231, 249-50 (2009). If such a rule was adopted in termination proceedings, it would allow

the parent's appellate counsel to file a motion alleging ineffective assistance of counsel in the trial court before the filing of the initial brief on appeal. This would give the trial court an opportunity to rule on the motion and conduct an evidentiary hearing, if necessary, thereby creating a sufficient record for appellate review. Since rulemaking is not this court's constitutional prerogative, we urge our supreme court to address this important matter through the exercise of its rulemaking power.

IV.

In conclusion, we affirm the termination of the mother's parental rights, but certify the following questions to be of great public importance:

> I. IS THE CRIMINAL STANDARD OF INEFFECTIVE ASSISTANCE OF COUNSEL ANNOUNCED IN STRICKLAND V. WASHINGTON APPLICABLE TO CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL IN PROCEEDINGS INVOLVING THE TERMINATION OF PARENTAL RIGHTS?

> II. IS ANY PROCEDURE AVAILABLE FOLLOWING THE TERMINATION OF PARENTAL RIGHTS TO RAISE CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL THAT ARE NOT APPARENT ON THE FACE OF THE RECORD?

AFFIRMED; QUESTIONS CERTIFIED.

ROBERTS and MARSTILLER, JJ., CONCUR.

14