# Supreme Court of Florida

——————

No. SC14-1990

——————

**J.B., etc.,**
Petitioner,

vs.

**FLORIDA DEPARTMENT OF CHILDREN AND FAMILIES,**
Respondent.

[July 9, 2015]

PER CURIAM.

In this case, which involves J.B.'s challenge to an order terminating her parental rights, we consider two questions of great public importance concerning an indigent parent's right to counsel in termination proceedings. The First District Court of Appeal in J.B. v. Department of Children & Families, 158 So. 3d 653, 659 (Fla. 1st DCA 2014), certified the following questions of great public importance:

> I. IS THE CRIMINAL STANDARD OF INEFFECTIVE ASSISTANCE OF COUNSEL ANNOUNCED IN STRICKLAND V. WASHINGTON[, 466 U.S. 668 (1984)], APPLICABLE TO CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL IN PROCEEDINGS INVOLVING THE TERMINATION OF PARENTAL RIGHTS?

II. IS ANY PROCEDURE AVAILABLE FOLLOWING THE
TERMINATION OF PARENTAL RIGHTS TO RAISE CLAIMS OF
INEFFECTIVE ASSISTANCE OF COUNSEL THAT ARE NOT
APPARENT ON THE FACE OF THE RECORD?

We have jurisdiction. See art. V, § 3(b)(4), Fla. Const.; see also J.B. v. Dep't of Child. & Fam., 2014 WL 5420898 (Fla. Oct. 21, 2014) (granting review). We answer question I in the negative and question II in the affirmative.

Although we have previously held that indigent parents have a constitutional right to counsel in proceedings to terminate parental rights (TPR), we have not expressly recognized an attendant right to the effective assistance of counsel. For the reasons we explain here, we hold that the right to counsel in termination of parental right (TPR) proceedings includes the right to effective assistance and requires a means of vindicating that right. Accordingly, in response to the first certified question, we establish the appropriate standard for determining whether counsel provided constitutionally ineffective assistance in termination of parental rights proceedings. And regarding the second question, we provide here a temporary process for bringing such claims of ineffective assistance, and we direct the development of rules providing the procedure for vindicating that right. In this specific case, however, we conclude that J.B. has failed to present any basis for setting aside the order terminating her parental rights and thus we approve the district court's decision.

## I.  BACKGROUND

- 2 -

Petitioner J.B. (Mother) was seventeen when the child D.L. was born in 2009.  In January 2011, the Department of Children and Families (DCF or Department) investigated allegations of child abuse as to D.L.

> On March 14, 2011, the Department of Children and Families removed the child, D.L., from the mother's custody based on allegations the mother was abusing illegal drugs, had been living in a "crack house" followed by a homeless shelter, and was currently in jail for violating her probation.  On April 1, 2011, the Department filed a dependency petition alleging the mother violated a safety plan, was unstable, allowed the child to frequent unsafe locations, and left the child with strangers at the homeless shelter.  On June 22, 2011, the trial court adjudicated the child dependent based on the mother's consent.  On July 13, 2011, the trial court accepted a case plan with the goal of reunification.
>
> On February 10, 2012, the Department filed a petition for termination of parental rights.  The petition alleged the mother abandoned the child by failing to provide for him financially or emotionally and failing to exercise her parental duties and responsibilities.  The petition further alleged the mother failed to substantially comply with the case plan within a nine-month time period in that she failed to complete an in-patient drug treatment program, complete a parenting course, follow all recommendations of a parenting evaluation, follow all recommendations of a psychiatric evaluation, undergo random urinalysis and a hair follicle test, participate in a General Equivalency Diploma (GED) program, maintain stable housing, maintain verifiable income, and maintain contact with the dependency case manager.

J.B., 158 So. 3d at 654-55.

In June 2013, the Department filed a "Verified Petition for Termination of Parental Rights and Permanent Commitment for Purposes of Subsequent Adoption."  The petition contained allegations that the termination of parental

rights was in the manifest best interests of the child; that the mother and unknown father had neglected, abused or abandoned D.L.; that D.L. was in the stable home of a foster parent who cared for D.L. for two years and would like to adopt him; that the Mother had been represented by counsel since the child was placed in the Department's care; and that D.L. would not be harmed by the termination of parental rights.

The day before the adjudicatory hearing on the petition, the mother's counsel filed a motion for continuance on the ground that the father of D.L. had not yet been identified through DNA testing. At the hearing on July 19, 2013, the judge heard argument on the motion and denied it as untimely, not "proper in form," and insufficient to establish "good cause sufficient to override the statutory mandates regarding the child's right to permanency." 158 So. 3d at 655. The following exchange ensued:

> THE COURT: Do you want opening statements?
> [MOTHER'S COUNSEL]: No, Your Honor. I'm not prepared to go forward in that case. I was under the impression that things would have been different, but something changed.
> THE COURT: Well, regardless, we have been scheduled for this trial for quite a while. And the Court knows that you're a competent attorney. Let's go forward. If at some point, [counsel], after all this time to prepare for this trial, there's a particular additional thing or person that you think you need to have put in evidence or call as a witness, you can go ahead and identify that for the record. The Court notes you didn't file your—or send in your motion for continuance until—it's signed on July 18th. Today is July 19th. The Court is confident that as experienced and competent an attorney as you are, that you would have been ready to go forward and would have filed a

> motion for continuance a lot sooner if there were any particular inability on your part to be effective.

Id. The mother's counsel then explained that he filed the motion for continuance only after consulting with DCF counsel, but that DCF apparently had changed its position since then.

Counsel for DCF gave her opening argument, and the court then asked J.B.'s counsel again if he wanted to make a statement. He responded affirmatively.

> After stating that he was "really exhausted" and that "the last few weeks ha[d] worn [him] down," the mother's counsel asserted in his opening statement that the mother had complied with most of her case plan and any failures by the mother were attributable to the Department, which failed to prepare the mother for life as an adult when the mother herself was a foster child in the Department's custody.

Id.

The Department presented a number of witnesses in support of its petition. A child protective investigator, Ashley Birdshaw, testified regarding the investigation of the initial abuse report and the determination that J.B. did not have stable housing and had lived in a crack house for a time. During the direct examination, counsel objected on grounds of hearsay as to allegations in the abuse report and later on grounds of best evidence to taking judicial notice of the mother's date of birth. Both objections were overruled. However, the Department later offered the mother's birth certificate into evidence. During cross-examination, Birdshaw disagreed that she " 'left a minor on the streets with a

child,' " and the trial court took judicial notice that the mother was eighteen at the time of the investigation. Id.

Bethanie Milford, the dependency case manager, testified regarding the mother's noncompliance with the case plan, including failure to complete a sobriety program and failure to visit the child because she was incarcerated. Moreover, J.B.'s former foster parents informed Milford that J.B. had been arrested for prostitution in Georgia, and the trial court took judicial notice, without objection, of previous judicial reviews. Id. at 655-56. When the child's foster mother testified, she reported that the child "became upset and had nightmares after seeing the mother." Id. at 656. Counsel objected to a question the Department asked her, arguing that it required the witness to speculate in a field in which she lacked qualifications; the objection was sustained.

A child and adolescent psychologist, Dr. Carole Oseroff, testified that she conducted psychological evaluations of J.B. in 2005 and 2007 and conducted parenting assessments of her in 2011 and 2012. Id. She opined that J.B. was of average intelligence but had attention deficit hyperactivity disorder, posttraumatic stress disorder, and anti-social personality disorder. Further, J.B. continued to have problems with law enforcement issues, substance abuse, emotional problems, and basic stability. Dr. Oseroff concluded that J.B. would likely not be able to change sufficiently to reunify with the child. Accordingly, she recommended

- 6 -

termination of J.B.'s parental rights.  On cross-examination by J.B.'s counsel, the psychologist conceded that when J.B. was a foster child herself, the Department failed to treat her effectively.  Id.

D.L.'s therapist testified that after the mother visited the child, he stopped progressing, and the child's foster mother stated that after J.B. visited, D.L. experienced nightmares.  In addition, the child's guardian ad litem recommended termination of parental rights, in part, because the mother could not provide the child with stability.  She also "testified that the child had developed a parent-child relationship with his foster parents."  Id.

> At the conclusion of the Department's case, the mother's counsel did not move for a judgment of dismissal.  During the mother's case, the Department objected to the mother presenting testimony from her former foster parents because the mother's counsel never filed a witness list.  The mother's counsel replied that he had not filed a witness list because he was under the impression that the Department had consented to continue the case.  The court overruled the objection and allowed both witnesses to testify.  Although the mother submitted her own witness list identifying Cassie Hemmick and Lorie Asifor as additional witnesses, the mother indicated that Asifor could be excused.  The mother's counsel then indicated he advised the mother that it was not in her best interest to call Hemmick as a witness.  After discussing the matter further with her counsel, the mother agreed not to call Hemmick.  The mother's counsel then called Sharon Ross-Donaldson, who was the mother's therapist.  Finally, the mother testified on her own behalf.  During cross-examination, the mother testified she was never asked if any family members could care for the child and told the case manager that family members were available.  The mother's counsel did not pursue this further on redirect examination.

During closing arguments, the mother's counsel again argued the mother's problems stemmed from the Department's own failure to effectively help her while she was a child in foster care. Counsel then argued the Department did not provide a qualified case manager for the mother, who had mental health issues, as required by chapter 39, Florida Statutes. When the court asked counsel for the applicable statute, counsel responded that he did not have a statute book with him. The trial court then provided one to counsel, who responded, "Of course, I may be so—I'm so tired, I may be doing everything, again, wrong, but I believe that that is—[.]" The Department's counsel attempted to assist the mother's counsel in finding the statute. After the trial court called a recess so that counsel could review the statute suggested by the Department's counsel, the mother's counsel stated, "Yes. The statute she has pointed to is not the one I was thinking of. It may have changed. I've been doing this so dadgum long, I've been at this—put in 80 hours this week already, I can't think straight, so I withdraw that part of it."

Id. at 656-57.

Subsequently, the trial court entered a final judgment terminating J.B.'s and the unknown father's parental rights. The court found that the child's parents failed to comply with the case plan, that J.B. abandoned and neglected the child within the meaning of the law, that the child was at substantial risk of harm, and that termination of parental rights was the least restrictive means of protecting the child from harm. Id. at 657.

J.B. appealed the order to the First District, raising for the first time on appeal the following ten claims of ineffective assistance of counsel regarding her counsel's performance in the TPR proceedings.

[C]ounsel was ineffective for (1) filing an untimely motion for a continuance to investigate prospective fathers; (2) admitting he was

- 8 -

exhausted and not prepared to go forward during opening statements; (3) erroneously believing the mother was still a minor when the child was sheltered; (4) allowing the introduction of hearsay in the form of previous judicial reviews and testimony concerning the mother leaving a sobriety program and being arrested for prostitution in Georgia, the child not being allowed to live with the mother at a halfway house, and the child's behavior changing after he resumed visitation with the mother; (5) failing to file a witness list and opposing the mother calling a witness on the ground it was not in the mother's best interest; (6) failing to cross-examine the guardian ad litem or object to the guardian's report on timeliness and hearsay grounds; (7) failing to move for a judgment of dismissal at the conclusion of the Department's case; (8) failing to pursue on redirect examination the mother's claim that a relative placement was available for the child; (9) misleading the court during closing argument that the Department did not provide a qualified case manager for the mother, who had mental health issues; and (10) failing to object to the trial court's failure to inform the mother of the availability of advocacy services under section 39.502, Florida Statutes (2011).

Id. at 658. The First District applied the Strickland standard to J.B.'s ineffective assistance of counsel claims and concluded that "the mother . . . failed to establish that 'the ineffectiveness is obvious on the face of the appellate record, the prejudice caused by the conduct is indisputable, and a tactical explanation for the conduct is inconceivable.' " Id. (quoting Corzo v. State, 806 So. 2d 642, 645 (Fla. 2d DCA 2002)). Accordingly, the district court affirmed the order terminating her parental rights. The First District, however, "express[ed] concern regarding the lack of any effective procedure for raising ineffective assistance of counsel claims in termination proceedings where the alleged ineffectiveness is not apparent on the face of the record." Id. at 658-59. Accordingly, the district court certified the two

- 9 -

questions of great public importance regarding the right to effective counsel and vindication of that right.

## II. ANALYSIS

We begin our discussion of the certified questions by (A) outlining the right of indigent parents to counsel in dependency and termination of parental rights proceedings. Next, (B) we expressly recognize that indigent parents not only have a right to counsel, but that under our state constitution, they are afforded the right to the effective assistance of counsel in TPR proceedings. And (C) we establish a standard for determining whether counsel has provided ineffective assistance in such proceedings. Next, (D) we provide a temporary procedure for bringing claims of ineffective assistance in the circuit court that will remain in place until a final rule replaces it. Finally, (E) we review the merits of the decision in this case and approve the result reached by the district court. Our review is de novo. See S. Baptist Hosp. of Fla., Inc. v. Welker, 908 So. 2d 317, 319 (Fla. 2005).

## A. The Right to Counsel in TPR Proceedings

"It is a basic tenet of our society and our law that individuals have the fundamental constitutionally protected rights to procreate and to be a parent to their children. These constitutional rights are recognized by both the Florida Constitution and the United States Constitution." D.M.T. v. T.M.H., 129 So. 3d 320, 334 (Fla. 2013). Moreover, as the Supreme Court has recognized, "[t]he

- 10 -

fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State." Santosky v. Kramer, 455 U.S. 745, 753 (1982). Accordingly, "[w]hen the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures." Id. at 753-54.

Under Florida statutory law, parents have a right to counsel in both dependency and TPR proceedings. §§ 39.013(1), (9)(a), Fla. Stat. (2011). In In re D.B., 385 So. 2d 83, 87 (Fla. 1980), however, this Court addressed the question of whether state provision of counsel to indigent parents in dependency and TPR proceedings was necessary for fundamental fairness. We held that as to dependency proceedings, appointment of counsel is not required by the constitution. Id. at 87, 90. On the other hand, we determined that "counsel is necessarily required under the due process clause of the United States and Florida Constitutions, in proceedings involving the permanent termination of parental rights to a child." Id. at 90. Although the United States Supreme Court subsequently held in Lassiter v. Department of Social Services, 452 U.S. 18, 31-32 (1981), that appointment of counsel in all TPR proceedings is not a due process requirement under the United States Constitution, that decision does not impact our Court's determination otherwise under the due process clause of Florida's

- 11 -

constitution. See M.E.K. v. R.L.K., 921 So. 2d 787, 790 (Fla. 5th DCA 2006) ("In the area of termination of parental rights, the Florida due process clause provides higher due process standards than the federal due process clause.").

**B. The Right to Effective Assistance of Counsel**

Although we recognized an indigent parent's state constitutional right to counsel in TPR proceedings in D.B., we did not expressly recognize an attendant right to the effective assistance of state-provided counsel. Several district courts, however, have expressly recognized the right to effective assistance of counsel in TPR proceedings and the need for a procedure to enforce the right. For example in In re M.R., 565 So. 2d 371, 372 (Fla. 1st DCA 1990), the First District held that the right to counsel in TPR proceedings requires "that such counsel must provide services which are sufficient to provide meaningful assistance" and that "unexplained failure of the parents' appointed counsel to even make an appearance at a termination of parental rights adjudicatory hearing fails, as a matter of law, to satisfy the meaningful assistance of counsel required." See In re E.K., 33 So. 3d 125, 127 (Fla. 2d DCA 2010) ("Although the supreme court has not explicitly said so, it appears that a parent who is constitutionally entitled to appointed counsel in a termination proceeding is implicitly entitled to effective assistance of counsel.").

In an earlier case, E.T. v. State, 930 So. 2d 721, 722 (Fla. 4th DCA 2006), a father whose parental rights in his two young children were terminated following a

hearing, raised claims of ineffective assistance of counsel on appeal and in a subsequent habeas petition. Citing D.B.'s holding that a parent has a constitutional right to counsel in TPR proceedings, the Fourth District stated "the obvious—a constitutional right to counsel means effective counsel; otherwise, the right is meaningless." Id. at 726. Accordingly, the Fourth District certified two questions to this Court asking whether Florida recognizes the claim of ineffective assistance in TPR proceedings and what procedure should be followed to vindicate the right. E.T., 930 So. 2d at 729. See L.H. v. Dep't of Child. & Fam., 995 So. 2d 583, 585 (Fla. 5th DCA 2008) (employing Strickland regarding ineffective assistance of counsel claim in dependency case in which TPR was possible because of criminal charges and certifying same questions as E.T.). Although we dismissed the review in E.T. v. State, 957 So. 2d 559, 559-60 (Fla. 2007), we referred the "issue of ineffective assistance of counsel claims in termination of parental rights cases" to two court rules committees. The committees, however, declined to address the issue absent a clear recognition by this Court of a right to the effective assistance of counsel. Consistent with our holding in D.B., we now expressly hold what was only implicit in our prior decisions: the right of indigent parents to counsel under the Florida Constitution in TPR proceedings necessarily includes the constitutional right to the effective assistance of counsel.

### C. The Standard for Ineffective Assistance in TPR Cases

- 13 -

As we explained above, the constitutional right to counsel afforded indigent parents in termination of parental right proceedings is not derived from the Sixth Amendment to the United States Constitution, nor from article I, section 16 of the Florida Constitution, both of which guarantee counsel to criminal defendants. Instead, as this Court held in D.B., the right to counsel in TPR proceedings under the state constitution stems from article I, section 9, which in turn provides in part that "[n]o person shall be deprived of life, liberty, or property without due process of law . . . ." 385 So. 2d at 90. Having recognized that the constitutional right to counsel in termination of parental rights proceedings includes the right to effective counsel, we now turn to the question of what standard applies to a determination of counsel's effectiveness.

The certified question asks whether the standard of Strickland, which applies to ineffective assistance of counsel claims in criminal cases, should apply to such claims made by indigent parents in civil TPR proceedings. Under Strickland, to establish that counsel provided constitutionally ineffective assistance, the defendant must establish that (a) counsel's performance was deficient by showing counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (b) that as a result of those errors the defense was so prejudiced that the defendant was deprived of a fair trial. 466 U.S. at 687. Prejudice under the Strickland standard is established if

"confidence in the outcome is undermined." Maxwell v. Wainwright, 490 So. 2d 927, 932 (Fla. 1986). The Department urges us to adopt this standard, pointing out that of the States that have recognized a constitutional right to counsel in TPR cases, many have adopted the Strickland standard for determining the effectiveness of counsel. See, e.g., K.C. v. Jefferson Cnty. Dep't of Human Res., 54 So. 3d 407, 412 (Ala. Civ. App. 2010); In Interest of A.H.P., 500 S.E.2d 418, 422 (Ga. Ct. App. 1998); In re Adoption/Guardianship of Chaden M., 984 A.2d 420, 432-33 & n.12. (Md. Ct. Spec. App. 2009) ("observ[ing] that the Strickland analysis is generally familiar to both the bench and bar, including public defenders who are called upon to represent parents in TPR proceedings at both the trial and appellate level").

Petitioner, on the other hand, argues that Strickland is inappropriate for TPR cases, in part because that standard includes a strong presumption that counsel's performance was not deficient. Instead, Petitioner urges the adoption of the fundamental fairness standard employed by the Oregon Supreme Court in State ex rel. Juvenile Department of Multnomah County v. Geist, 796 P.2d 1193, 1203 (Or. 1990). Under Geist, "[a] particular tactical decision [by counsel] will constitute inadequate assistance of counsel only if a court affirmatively finds that no adequate counsel would have followed that tactic under the circumstances and, therefore, that following that tactic reflected an absence or suspension of professional skill

and judgment." 796 P.2d at 1203 (emphasis in original). However, a reviewing court's finding that counsel provided inadequate assistance is insufficient for reversal if the court also finds "that the proceeding was fundamentally fair and that even with adequate counsel, the result inevitably, would have been the same." Id. at 1204. Hawai'i also adopted the fundamental fairness standard, because the "constitutional bases of the respective rights to counsel are different [in TPR and criminal cases]," and because of the "substantial differences in the purposes of criminal as opposed to termination of parental rights proceedings." In re RGB, 229 P.3d 1066, 1090 (Haw. 2010).

There are, of course, similarities between the interests at stake in TPR and criminal proceedings. Both the criminal defendant and the indigent parent have the right to a fair proceeding, appointment of counsel, and the attendant right to effective assistance of counsel. Although derived from different constitutional sources, these rights are inherently similar and are constitutionally guaranteed. Moreover, the consequences of both a guilty verdict and an order terminating parental rights are weighty. The right to effective assistance in either proceeding is the right to reasonable, professional assistance. And in both contexts, not every instance of deficient performance by counsel justifies setting aside a judgment. There must ordinarily be a showing of prejudice based on an evaluation of the

impact of counsel's specific deficiencies on the result.[1]  So there necessarily are

similarities between the <u>Strickland</u> standard and the standard applicable in the TPR

context.

But there are important differences between the criminal context within

which the <u>Strickland</u> standard for ineffective assistance was developed and the

termination of parental rights context that we address here.  As the Fourth District

explained,

> a challenge to counsel's effectiveness in a TPR differs significantly
> from the traditional collateral attack on criminal judgments.  It does
> not involve the same rights; it does not involve the same liberty
> interest; it does not involve the same standard of proof; it does not
> involve the judge in the same role; it does not involve the same time
> frames; and it does not involve the same parties.

<u>E.T. v. State</u>, 930 So. 2d 721, 726 (Fla 4th DCA 2006).  Although the State has a

significant interest in the finality of both criminal and TPR judgments, the interest

in finality is substantially heightened in the TPR context by the very important

---

1.  In <u>U.S. v. Cronic</u>, 466 U.S. 648, 658-60 (1984), however, the Supreme Court recognized a narrow exception to <u>Strickland</u>'s two-pronged ineffective assistance analysis of deficiency and prejudice under circumstances as to which prejudice can be presumed.  That is, the Court found it unnecessary to require a defendant to demonstrate prejudice under "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified."  <u>Id.</u> at 658.  Such instances include the denial of counsel at trial or at any critical stage of trial and where "[c]ircumstances [are of such] magnitude [that] the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial."  <u>Id.</u> at 659-60.

consideration that must be given to the child's interest in reaching permanency and to the harm that results when permanency is unduly delayed. We therefore conclude that it is not appropriate simply to transplant Strickland and the body of case law that it has spawned into the TPR context.

Given the various interests involved in TPR cases, we conclude that the standard for determining ineffective assistance of counsel claims includes the following elements. There is a strong presumption that the attorney representing a parent, as a professional subject to the standards of the legal profession, has provided reasonable, professional assistance. Accordingly, to overcome that presumption and obtain relief from a TPR order, a parent must identify specific errors of commission or of omission made by the parent's counsel that under the totality of the circumstances evidence a deficiency in the exercise of reasonable, professional judgment in the case. Moreover, the parent must establish that, cumulatively, this deficient representation so prejudiced the outcome of the TPR proceeding that but for counsel's deficient representation the parent's rights would not have been terminated. If the parent establishes that the result of the TPR proceeding would have been different absent the attorney's deficient performance, the order terminating parental rights should be vacated, and the case returned to the circuit court for further proceedings. This requires a showing of prejudice that

goes beyond the <u>Strickland</u> requirement that confidence in the outcome is undermined.

## D. A Temporary Procedure for Ineffective Assistance Claims in TPR Cases

Having recognized an indigent parent's right to effective assistance and set forth the standard for determining ineffective assistance of counsel, we now turn to the issue of procedure. Here we direct rulemaking to develop a procedure for addressing such claims in cases in which parental rights are terminated. We also recognize an interim procedure for bringing claims of ineffective assistance which will become effective upon this opinion becoming final until such time as the formal process of rulemaking is completed and a rule of procedure is approved by this Court.

Before we outline the temporary process for bringing ineffective assistance claims after the termination of parental rights, we first address an underlying concern as to any process developed for such claims. In discussing the appropriate standard for TPR ineffective assistance of counsel claims, we highlighted the important interest that the child has in reaching permanency. Timely disposition of TPR ineffective assistance of counsel claims is essential in light of the harm to the child that results when permanency is unduly delayed. In <u>Lehman v. Lycoming County Children's Services Agency</u>, 458 U.S. 502 (1982), the Supreme Court was similarly concerned with time when it rejected a parent's use of the federal habeas

corpus provision, 28 U.S.C. § 2254, to obtain collateral review of a state court order involuntarily terminating parental rights.  The Court commented as follows:

> The State's interest in finality is unusually strong in child-custody disputes.  The grant of federal habeas would prolong uncertainty for children . . . , possibly lessening their chances of adoption.  It is undisputed that children require secure, stable, long-term, continuous relationships with their parents or foster parents.  There is little that can be as detrimental to a child's sound development as uncertainty over whether he is to remain in his current "home," under the care of his parents or foster parents, especially when such uncertainty is prolonged.  Extended uncertainty would be inevitable in many cases if federal courts had jurisdiction to relitigate state custody decisions.

458 U.S. at 513-14.

For this reason, the process providing parents whose rights to their children have been terminated with the means to enforce their right to the effective assistance of counsel must proceed to resolution within a strictly limited timeframe.  See E.T., 930 So. 2d at 728 (discussing the "perils inherent in the use of habeas corpus petitions" for ineffective assistance claims in TPR cases, "such as unlimited time to file the petition"); In re E.H., 609 So. 2d 1289, 1291 (Fla. 1992) (limiting use of habeas corpus petition in TPR cases to claims of entitlement to belated appeal where counsel failed to file timely notice of appeal); see also E.K., 33 So. 3d at 126 (holding that motion for relief from judgment under Florida Rule of Juvenile Procedure 8.270 "was not a proper mechanism through which to raise a claim of ineffective assistance of counsel in a termination proceeding").

Subsection 39.815(1), Florida Statutes (2007), already requires that the district courts "shall give an appeal from an order terminating parental rights priority in docketing" and further requires that they "shall render a decision on the appeal as expeditiously as possible." And Florida Rule of Appellate Procedure 9.146 specifies the special procedures and time limitations applicable to appeals from final orders in dependency and TPR proceedings. Accordingly, the post-TPR proceedings developed must assure a prompt, short-lived process for adjudicating ineffective assistance claims regarding TPR orders.

In the interim, we provide the following procedure to be followed in bringing claims of ineffective assistance of counsel following the termination of parental rights. Because our temporary plan requires that claims of ineffective assistance first must be raised by the parent and ruled on by the trial court, it will be necessary for the trial judge to ensure that the parents whose rights are at issue are informed of their rights. At the conclusion of each TPR adjudicatory hearing, the circuit court shall orally inform the parents for whom counsel was appointed in accordance with the law of (1) the right to appeal the order entered at the conclusion of the TPR proceedings to the district court, and (2) the right to file a motion in the circuit court alleging that appointed counsel provided constitutionally ineffective assistance if the court enters a judgment terminating parental rights. In addition, a written order terminating parental rights shall

include a brief statement informing the parents of the right to effective assistance and a brief explanation of the procedure for filing such a claim.

Just as the majority of criminal defendants have no right to appointed postconviction counsel and must file claims of ineffective assistance of counsel pro se in the circuit court under Florida Rule of Criminal Procedure 3.850, indigent parents—likewise without the assistance of appointed counsel—must file a motion in the circuit court claiming ineffective assistance of trial counsel in the TPR proceeding. However, because of the importance of timely processing of such claims, any appeal from an order denying a motion alleging the ineffective assistance of counsel will be raised and addressed within any appeal from the order terminating parental rights.

Under the interim procedure for ineffective assistance of counsel claims, a parent—without assistance of appointed counsel—shall have twenty (20) days after the termination judgment issues within which to file a motion in the trial court alleging claims of ineffective assistance of counsel. The motion must contain the case name and number, and identify the date the order of termination of parental rights issued. In the motion, the parent shall identify specific acts or omissions in trial counsel's representation of the parent during the TPR proceedings that the parent alleges constituted a failure to provide reasonable, professional assistance. The parent must explain how the errors or omissions prejudiced the parent's case

in the termination proceeding to such an extent that the result would have been different absent the deficient performance. If a parent files an ineffective assistance of counsel motion, rendition of the order in the TPR proceeding will be tolled for purposes of appeal until the circuit court issues an order on the pro se ineffective assistance motion.

If a parent chooses to file a motion claiming ineffective assistance of counsel, counsel of record cannot continue representation. Under the current rules, after entry of the order terminating parental rights, counsel of record for the parent is not permitted to withdraw from representation of the parent until the "attorney certifies that the attorney has discussed appellate remedies with the parent" and the parent has chosen not to appeal. Fla. R. Juv. P. 8.517(a)(1). If the parent chooses to appeal, the attorney must certify, among other things, that the parent so chose, that a notice of appeal signed by counsel and the parent has been filed, and that an order appointing appellate counsel, if any, has been entered. Id.

In light of our decision here, the appointed attorney representing an indigent parent, must—after issuance of an order terminating parental rights—discuss appellate remedies and determine whether the parent wants to appeal the TPR order. If the answer is affirmative, regardless of the parent's prior contrary representation to the circuit judge, counsel must also inquire whether the parent intends to file a motion claiming ineffective assistance of counsel. If the parent

- 23 -

responds affirmatively, then counsel must immediately seek withdrawal on this basis. In addition, if the parent subsequently files a motion alleging ineffective assistance despite the parent's prior expression of a contrary intent, if counsel of record is also appellate counsel withdrawal is required at that time, and new counsel will be appointed for any appeal from the TPR order and from the disposition of the ineffective assistance of counsel motion. As stated above, the parent is entitled to appointed counsel with regard to the termination in both the trial and appellate court, but the parent is not entitled to appointed counsel in any trial court proceeding regarding a motion alleging ineffective assistance of counsel.

When a parent files a motion alleging ineffective assistance of counsel, rendition of the trial court's TPR order will be tolled for purposes of appeal until the trial court rules on any claim of ineffective assistance of counsel. The trial court shall promptly review the ineffective assistance motion and order compilation of the record regarding the termination of parental rights proceedings on an expedited basis. Further, the trial court shall conduct proceedings, including an evidentiary hearing if necessary, to determine whether the motion should be granted or denied. The circuit court shall render an order within twenty-five (25) days after the motion alleging ineffective assistance was filed or the motion shall be deemed denied. On appeal, the district court will review claims regarding the parent's appeal from the trial court's TPR order and from the disposition of the

ineffective assistance motion.  This process will apply to any case in which a judgment terminating parental rights is entered after this case becomes final.

The above process will remain in place until the rules governing such a process become effective upon approval by this Court.  Creation of the permanent process and development of the attendant rules will be the task of a special committee, the members of which will be selected by the Chief Justice of this Court.  The members will be chosen from the Juvenile Court Rules Committee, the Appellate Court Rules Committee, and others with relevant expertise from related areas.  The proposed rules developed by the Chief Justice's Select Committee shall be submitted to this Court by or on November 30, 2015.

### E.  Petitioner Is Not Entitled to Relief

Finally, we turn to the merits of the specific claims of ineffective assistance presented by J.B. in this case.  Petitioner argues in conclusory fashion that she did not receive constitutionally effective assistance of counsel in the TPR proceedings under the standards of either <u>Strickland</u> or <u>Geist</u> and that she was prejudiced by counsel's performance.  Although Petitioner did not raise any claims of ineffective assistance in the trial court, she raised the following ten claims on appeal to the First District.

> [H]er counsel was ineffective for (1) filing an untimely motion for a continuance to investigate prospective fathers; (2) admitting he was exhausted and not prepared to go forward during opening statements; (3) erroneously believing the mother was still a minor when the child

was sheltered; (4) allowing the introduction of hearsay in the form of previous judicial reviews and testimony concerning the mother leaving a sobriety program and being arrested for prostitution in Georgia, the child not being allowed to live with the mother at a halfway house, and the child's behavior changing after he resumed visitation with the mother; (5) failing to file a witness list and opposing the mother calling a witness on the ground it was not in the mother's best interest; (6) failing to cross-examine the guardian ad litem or object to the guardian's report on timeliness and hearsay grounds; (7) failing to move for a judgment of dismissal at the conclusion of the Department's case; (8) failing to pursue on redirect examination the mother's claim that a relative placement was available for the child; (9) misleading the court during closing argument that the Department did not provide a qualified case manager for the mother, who had mental health issues; and (10) failing to object to the trial court's failure to inform the mother of the availability of advocacy services under section 39.502, Florida Statutes (2011).

J.B., 158 So. 3d at 657-58. The district court applied the Strickland standard to these claims and affirmed, determining that "the face of the record fails to show" any support for her claims and "the mother has failed to establish that 'the ineffectiveness is obvious on the face of the appellate record, the prejudice caused by the conduct is indisputable, and a tactical explanation for the conduct is inconceivable.' " Id. at 658 (quoting Corzo, 806 So. 2d at 645). Although we disagree with the district court's use of the Strickland standard, we agree with the conclusion that Petitioner has failed to present a meritorious argument.

Regardless of whether Strickland, Geist, or the standard we have set forth above is applied to the current claim, the result is the same. All these standards require the person claiming ineffective assistance to point out counsel's errors of

- 26 -

commission or omission and demonstrate that prejudice ensued from counsel's deficient representation. Petitioner's allegations of ineffective assistance are stated in conclusory fashion, and she has not demonstrated how she was prejudiced by counsel's deficient performance. Although our recognition of a right to effective assistance of counsel in TPR proceedings and provision of a means to vindicate that right is newly recognized here, the basic requirements for a sufficient claim of ineffective assistance or an allegation of trial court error are longstanding. Accordingly, we approve the First District's affirmance of the termination of the mother's parental rights in this case.

### III. CONCLUSION

We have set forth the standard to be applied to claims of ineffective assistance of counsel in termination of parental rights proceedings. In addition, we have provided an interim procedural framework for parents to bring claims of ineffective assistance of counsel in termination of parental rights proceedings. We have also provided for rulemaking to implement a process for vindicating a parent's constitutional right to the effective assistance of counsel in termination of parental rights proceedings. Finally, we have concluded that the First District Court correctly affirmed the order terminating J.B.'s parental rights.

It is so ordered.

LABARGA, C.J., and LEWIS, QUINCE, CANADY, and PERRY, JJ., concur.
PARIENTE, J., concurs with an opinion.
POLSTON, J., recused.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

PARIENTE, J., concurring.

I concur in the Court's opinion but with trepidation because providing a mechanism to vindicate ineffective assistance of counsel claims in termination of parental rights (TPR) proceedings should not unintentionally cause negative consequences in the life of the child as a result of further delay. I therefore emphasize the important reality articulated by the Court—that "[t]imely disposition of TPR ineffective assistance of counsel claims is essential in light of the harm to the child that results when permanency is unduly delayed." Majority op. at 19. As cogently recognized by the Supreme Court of Pennsylvania, "it is of paramount importance in a child's life to have decisions about the child's status and placement be final, and not subject to challenge absent a strong showing of ineffectiveness on the part of counsel." In re S.M., 614 A.2d 312, 316 (Pa. 1992).

I write separately for three primary reasons: (1) to highlight the tension between protecting the right of a parent to file a claim of ineffective assistance of counsel with the critical goal of ensuring permanency and stability in the life of the child at the center of the legal dispute; (2) to suggest additional procedures and safeguards for trial courts to employ in balancing these competing interests; and

(3) to explain why the standard adopted by the majority is well-suited to TPR proceedings and should not be conflated with the standard that is applied to ineffective assistance of counsel claims in criminal cases. I address each point in turn.

My chief concern, which has been echoed by the Office of the Statewide Guardian ad Litem (GAL), is that despite our best efforts, the obvious danger in establishing a procedure for parents to file a claim of ineffective assistance of counsel in TPR proceedings is that we may delay permanency for the child. Even if that delay is "only" a matter of 45 days at the trial level—20 days to file the motion and 25 days for the trial court to issue a ruling—the ability of a parent to raise this issue and appeal a denial undoubtedly will complicate the process. So too will the requirement that different counsel be appointed—a necessary procedure but one that nevertheless carries the risk of further delaying the finality of the termination of parental rights because new counsel will be unfamiliar with what may at that point be a long and complicated record. And, with any delay, we increase the risk of thwarting adoption of the child into a loving family.[2]

_____

2. I understand the concern that the parents' rights not be terminated unless the requisite statutory showings have been made and, indeed, the standard is a high one of clear and convincing evidence. But the extreme example given in a secondary source cited by the Petitioner, where the termination is erroneously filed against a parent whom the State mistakes for another individual serving a sentence of life imprisonment, is divorced from reality and highly improbable given the extensive proceedings that precede any termination of parental rights. See

This case provides a telling example of delay. Despite the efforts to expedite the case at every level of judicial proceedings, including in this Court, the child who was born on November 29, 2009, with an order of termination of parental rights entered on August 13, 2013, and an appellate decision issued on October 7, 2014, is still in legal limbo.

In enacting procedures to protect the parents' rights, everyone involved should be cognizant that the best interests of the child at the center of the case must remain foremost—and that the child currently has no recognized constitutional right, and only a limited statutory right, to counsel. In order to assist in ensuring that the child's interests are taken into account, I would require the appointment of an attorney to specifically represent the child and advocate on his or her behalf in cases where ineffective assistance of counsel is asserted.

The role of the trial courts in striking the proper balance between the best interests of the child and the rights of the parents is paramount. Unlike a trial court in a criminal case, a trial court in a TPR proceeding is an active participant at every step of the way—from the initial shelter hearing to the shelter review, arraignment, dependency hearings, disposition hearings, periodic judicial status reviews

---

Anthony C. Musto, <u>Potato, Potahto: Whether Ineffective Assistance or Due Process, An Effective Rule is Overdue in Termination of Parental Rights Cases in Florida</u>, 21 St. Thomas L. Rev. 231 (Winter 2009).

conducted at a minimum of every six months, permanency hearings, advisory hearings, pretrial hearings, and finally all the way through the termination of parental rights adjudicatory hearings. See §§ 39.401(5) (shelter review hearing if placed with nonrelatives); 39.402 (shelter and shelter review hearing); 39.506 (arraignment); 39.507 (dependency adjudicatory hearing); 39.521 (disposition); 39.621 (permanency); 39.701(judicial review); 39.808 (advisory and pretrial); 39.809 (termination adjudicatory), Fla. Stat. (2014).

The amicus curiae brief filed by the GAL elaborates on the oversight role of the trial courts in dependency and TPR proceedings:

> Chapter 39 [of the Florida Statutes] defines its purpose as the protection of children and the recognition that most families desire to be competent caregivers and providers for their children. § 39.001(1)(a) and (b), Fla. Stat. (2014). Based on this premise, the Legislature created a process that while considering a child's right to permanency, provides judicial oversight by a judge who is not merely an unbiased fact-finder but instead actively oversees the proceedings, appointment of a guardian ad litem to advocate for the best interests of the children, the parent's right to counsel, and numerous opportunities over the course of the case to be in front of the court and relay any concerns including those associated with their counsel. §§ 39.001(1)(l); 39.013; 39.0134; 39.402(8)(c); 39.701(1); 39.822, Fla. Stat. (2014); Fla. R. Juv. P. 8.225(d); I.B. v. Dep't. of Children & Fams., 876 So. 2d 581 (Fla. 5th DCA 2004) ("We also note that trial courts have inherent power when determining issues relating to children to consider the child's best interests."). This process ensures parental rights are not permanently severed without ample opportunities to be heard.

Amicus Curiae Brief of the Statewide Guardian ad Litem Office at 8, J.B. v. Dep't of Children & Families, No. SC14-1990 (Fla. Nov. 20, 2014).

Given its involvement at every step of the process, the trial court can—and should—inquire throughout the course of the TPR proceedings if the parents are satisfied with the performance of their attorney. In cases where the response is negative or equivocal, further inquiry can—and should—be undertaken to ensure that the parents' attorney is performing reasonably. The trial court can—and should—also take all necessary steps to remedy any perceived problem it can discern regarding the lawyer's representation.

This more actively involved role of the trial court is key to distinguishing why the same considerations underlying ineffective assistance of counsel claims in criminal cases are not at issue in TPR proceedings. As the Fourth District Court of Appeal has explained:

> The role of the judge in termination proceedings is different from that in a criminal proceeding. The judge in a termination proceeding is the fact finder, the sentinel of the child's best interest, and an involved participant in the process. The criminal trial judge, however, must maintain a neutral arbiter position. "Under the aegis of the court, the role of the lawyer, while important, does not carry the deleterious impact of ineffectiveness that may occur in criminal proceedings."

E.T. v. State, 930 So. 2d 721, 726 (Fla. 4th DCA 2006) (citations omitted) (quoting In re Adoption of T.M.F., 573 A.2d 1035, 1042 (Pa. Super. Ct. 1990)).

I therefore agree with the Court that because TPR proceedings are unique, neither a Strickland[3] standard nor the more potentially amorphous "fundamental fairness" standard for evaluating ineffective assistance of counsel claims fits precisely. The problem with the Strickland standard is that we risk importing the law surrounding ineffective assistance of counsel claims in criminal cases—and in particular the expansive case law involving death penalty cases—which, as the Court's opinion recognizes, involve totally different interests. See E.T., 930 So. 2d at 726 (noting that challenges to the effectiveness of an attorney's representation in criminal and TPR cases do not involve the same rights, the same liberty interest, the same standard of proof, the same timeframes, the same parties, or the same role of the judge).

A parent's right to counsel in a TPR proceeding emanates from the Due Process Clause of the Florida Constitution, rather than the Sixth Amendment right to counsel from which a criminal defendant's right to effective assistance is guaranteed. For this reason—and because of the different considerations at play, including especially the best interests of the child—I would ensure that the deficiency and prejudice prongs of the standard are clearly defined to require a parent to establish that the attorney's performance or lack of performance so

---

3. Strickland v. Washington, 466 U.S. 668 (1984).

departed from accepted standards of representation, and the effect of the deficiency was so obviously detrimental to the outcome of the case, that the termination of parental rights would not otherwise have occurred.  The Court's opinion does exactly this.

Thus, unlike the Strickland standard of prejudice in criminal cases, which refers to "undermining confidence" in the result and is not either an outcome-determinative "but for" or even a "more likely than not" test, see Porter v. McCollum, 558 U.S. 30 (2009), the standard for granting relief in a TPR proceeding on the basis of ineffective assistance of counsel involves exactly that kind of heightened showing—that the deficient representation so prejudiced the outcome of the TPR proceeding that but for counsel's deficient representation, the parent's rights would not have been terminated.[4]  In my view, this must be a

_____

4.  In addition to arguing for a meaningful standard to challenge ineffective assistance of counsel, the amicus curiae brief filed by Florida's Children First and the University of Miami School of Law Children and Family Youth Law Clinics provides a litany of claimed "examples of potentially ineffective assistance of counsel in Dependency and TPR cases," including attorneys being unavailable to their clients; attorneys negotiating pleas without full discovery; attorneys unfamiliar with the basic subject matter knowledge to effectively cross-examine experts; attorneys arguing outdated case law and statutes; and attorneys without basic knowledge of evidence.  Amicus Curiae Brief of Florida's Children First & Univ. of Miami Sch. of Law Children & Youth Law Clinics at 10-11, J.B. v. Dep't of Children & Families, No. SC14-1990 (Fla. Nov. 20, 2014).  The amicus curiae brief asserts that the "level of practice in Dependency and Termination proceedings is abysmal, and parents and children suffer because of it."  Id. at 11.  If a statewide problem exists in the quality of the representation of parents as asserted by Florida's Children First, I would urge The Florida Bar and its Standing Committee

"strong showing" of ineffectiveness, made by clear and convincing evidence.  In re S.M., 614 A.2d at 316.

To promote clarity in the standard and a complete understanding of its implications, the Chief Justice's Select Committee that will advise the Court on permanent rules should include judges who are part of the Dependency Court Improvement Panel, under the aegis of the Family Court Steering Committee, since those judges have the expertise and experience in these particular case types and are charged with improving the administration of justice as required not only by our statutes and case law but also under mandates from the federal government.  I would also suggest the inclusion of representatives from The Florida Bar's Standing Committee on the Legal Needs of Children, the Guardian Ad Litem Program, Florida's Children First, and the Florida Department of Children and Families, but I emphasize that the membership needs to consist of those judges and lawyers with particular expertise in this area.

Application for Review of the Decision of the District Court of Appeal - Certified Great Public Importance

First District - Case No. 1D13-4346

(Leon County)

---

on the Legal Needs of Children to take steps to analyze the extent of the problem and to propose solutions, as well as to consider recommended guidelines to be adopted regarding standards of representation in dependency and TPR proceedings.

Mike Martin Donovan of Legal Services of North Florida, Inc., Tallahassee, Florida,

for Petitioner

Stephanie Christina Zimmerman, Deputy Director & Statewide Director of Appeals, Children's Legal Services, Tampa, Florida; and Dwight Oneal Slater, Appellate Counsel, Children's Legal Services, Tallahassee, Florida,

for Respondent

Ryan Thomas Truskoski of Ryan Thomas Truskoski, P.A., Orlando, Florida;

for Amicus Curiae

George E. Schulz, Jr. of Holland & Knight, LLP, Jacksonville, Florida; and Robin L. Rosenberg, Deputy Director, Florida's Children First, Tampa, Florida,

for Amici Curiae Florida's Children First, Inc. and University of Miami School of Law Children & Youth Law Clinic

Wendie Michelle Cooper, Appellate Director, and Kelley Ruth Schaeffer, Appellate Counsel, Sanford, Florida,

for Amicus Curiae Statewide Guardian ad Litem Office