DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**T.P.,** the Mother, and **M.P.,** the Father,
Appellants,

v.

**DEPARTMENT OF CHILDREN AND FAMILIES** and
**STATEWIDE GUARDIAN AD LITEM OFFICE,**
Appellees.

Nos. 4D2024-1178, 4D2024-1179,
4D2024-2279, and 4D2024-2280

[April 9, 2025]

Consolidated appeals from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Stacey Schulman, Judge; L.T. Case Nos. 22-1874-CJ-DP and 22-1876-CJ-DP.

Valentina Villalobos of Elite Child Advocacy, PLLC, Tampa, and Octavia Brown of Community Law for Families and Children, Lakeland, for appellants.

Carolyn Schwarz of Children's Legal Services, Fort Lauderdale, for appellee Department of Children and Families.

Sara Elizabeth Goldfarb, Statewide Director of Appeals, and Sarah Todd Weitz, Senior Attorney, Statewide Guardian ad Litem Office, Tallahassee, for appellee Guardian ad Litem.

FORST, J.

T.P. ("the mother") and M.P. ("the father") (collectively, "the parents") appeal the trial court's denial of their third and fourth motions for extraordinary relief after the trial court terminated the parents' parental rights to infant twins ("the twins") and the father's parental rights to his biological son, the twins' older half-brother ("the half-brother"). The parents contend extraordinary relief was proper due to newly discovered evidence. We disagree and accordingly affirm.

## Background

Appellee, the Department of Children and Families ("the Department"), opened two dependency cases (one for the twins and one for the half-brother) after multiple unexplained injuries on the twins were discovered. These injuries included fractured ribs and extremities, a brain fracture, a bruised eye, and a lacerated liver. Many of the fractures were in multiple stages of healing. The half-brother had no injuries but was residing with the twins and the parents when the Department petitioned to shelter the children.

The dependency cases were consolidated, and a bench trial was held on the Department's termination of parental rights petitions. Several witnesses testified. Records ranging from hospital documents, reports, and photographs were admitted into evidence. The Department and the parents each called a medical witness. The medical testimony described the extent of the twins' injuries and focused on whether such injuries could have resulted from normal handling rather than nonaccidental abuse. Additionally, some of the testimony explored whether a medical anomaly or explanation, such as osteogenesis imperfecta (brittle bone disease), Ehlers-Danlos syndrome (EDS)[1], or vitamin deficiency, could account for the twins' extensive injuries.

The trial court ultimately found in two final judgments (one for the parents regarding the twins and one for the father regarding the half-brother) a medical explanation for these injuries was unlikely. The trial court made the following observations in determining to terminate parental rights:

- The twins' genetic panel was negative for brittle bone disease.
- Even if the twins had brittle bone disease, fractures were more likely to occur in the middle of the bone, not the "corner" fractures seen in the twins' extremities. The testimony revealed that corner fractures are "highly suspect" for abuse because these fractures are associated with twisting, pulling, and grabbing motions versus general handling and short distance falls.
- The twins' posterior rib fractures suggested a "holding of the chest and squeez[ing]" motion. And a connective tissue disorder like EDS does not manifest as brittle bones in

---

[1] Ehlers-Danlos syndrome is a group of connective tissue disorders associated with skin hyperelasticity and fragility, joint hypermobility, and collagen deficiency. *See* Ehlers-Danlos syndrome (EDS)*,* Stedman's Medical Dictionary, 879410 (2014).

children but rather as joint dislocations. Also, the twins did not exhibit any vitamin or nutrient deficiencies connected to bone development.

- The trial court concluded that this trial evidence largely pointed towards nonaccidental trauma as the cause of the twins' injuries.

*First Motions for Extraordinary Relief*

After the trial court issued its detailed sixty-page final judgments, the parents moved for extraordinary relief. The parents contended the mother's "newly discovered" genetic test results warranted reopening of the trial. The motions explained how the mother was diagnosed with a hypermobile variant of EDS, which the twins had at least a "50% chance of acquiring" from the mother. The motions further alleged that "[b]abies with [hypermobile EDS] can have fractures caused by normal handling and easy bruising."

The trial court granted the parents' request to reopen the trial "to hear testimony regarding a possible medical reason for [the twins'] injuries." The parents were permitted to present two expert witnesses to discuss EDS and metabolic bone disease. The Department was also permitted to call a rebuttal witness at the reopened trial.

*Amended Final Judgments*

At the reopened trial, the parents called their medical experts. One expert had reviewed several medical records to conclude that the twins suffered from metabolic bone disease. He explained how the absence of bruising at the fracture sites was indicative of "brittle bones," and various scans showed the twins had "poor mineralization." The other expert examined the mother and the twins. He also reviewed medical records and believed the twins, like the mother, had a hypermobile variant of EDS, which could explain all of the twins' injuries.

But the Department's rebuttal expert disagreed—explaining how the medical records did not show concerns about bone abnormalities, physical deformities, genetic anomalies, or stressors in utero. The rebuttal expert echoed prior medical testimony about how the twins had normal vitamin and nutrient levels and that EDS impacts connective tissue rather than bone collagen. The rebuttal expert also disagreed with the parents' EDS expert that hypermobile EDS could be diagnosed in children as young as the twins because infants in general are more naturally hypermobile.

The trial court did not find the parents' experts credible "or reliable in conjunction with the other testimony and evidence in this case" and proceeded to terminate the parents' parental rights.[2] The amended final judgments added an additional twenty-eight pages to incorporate these three experts' testimonies. The parents appealed the amended final judgments, which this Court per curiam affirmed without opinion. *See T.P. v. Dep't of Child. & Fams.*, 395 So. 3d 151 (Fla. 4th DCA 2024); *M.P. v. Dep't of Child. & Fams.*, 395 So. 3d 150 (Fla. 4th DCA 2024).

*Second Motions for Extraordinary Relief*

The parents filed second motions for extraordinary relief, which the trial court denied. These denials were not appealed.

*Third and Fourth Motions for Extraordinary Relief*

While the parents' appeals from the amended final judgments were pending, the parents filed third motions for extraordinary relief based on newly discovered evidence. The parents filed nearly identical motions with respect to the twins and the half-brother. They largely challenged the trial court's findings in the amended final judgments, seeking "to dig deeper into additional signs of bone fragility, and to determine if it is possible to date the initial fractures." The third motions attached the report of a bone fragility expert, who believed the skull injury was misdiagnosed as a fracture and that some rib fractures may have occurred before or during birth. Per his report, the bone fragility expert concluded, "[t]he obvious brittle bone condition of [the twins] may be either genetic, such as Osteogenesis imperfecta (OI) or Ehlers-Danlos syndrome, or acquired by conditions such as vitamin-D deficiency, exposure to medication in utero." This expert's report noted that he had reviewed medical records in reaching his conclusion. However, these medical records had been previously admitted into the trial record and reviewed by prior testifying medical experts.

The trial court summarily denied the parents' third motions, reasoning that the parents did not contact the bone fragility expert until after the

[2] The trial court terminated the parents' parental rights to the twins and the father's parental rights to the half-brother. The trial court found that the parents "engaged in egregious conduct or had the opportunity to prevent such conduct that endangered [the twins'] li[ves], safety, and physical, mental, or emotional health." *See* § 39.806(1)(f)2., Fla. Stat. (2022) (authorizing termination based on "egregious conduct"). Moreover, the trial court terminated the father's rights to the half-brother because egregious conduct "to one child is grounds to terminate a parent's rights to another." *See V.S. v. Dep't of Child. & Fams.*, 322 So. 3d 1153, 1160–62 (Fla. 4th DCA 2021) (citing § 39.806(1)(f), Fla. Stat. (2020)).

trial court had issued the amended final judgments, seeking to rebut the judgments' findings. However, the trial court reasoned, "a different interpretation of facts known at trial is not newly discovered evidence."

The parents then filed fourth motions for extraordinary relief on the basis of newly discovered evidence. Like their third motions, the parents filed one motion regarding the twins, and the father filed a nearly identical motion regarding the half-brother. The fourth motions were based on a geneticist's opinion. However, the mother admitted that she had not contacted this geneticist until nearly one year after the initial final judgments' entry—explaining the loss of her employment and insurance coverage as reasons for the delay. According to the fourth motions, this geneticist recommended that the twins undergo "whole genome sequencing" based on "new laboratory technology" that was not previously available. Ultimately, this geneticist's notes explained how the mother and the twins carried a genetic variant of "uncertain significance" that was associated with "autosomal dominant Spondylometaphyseal dysplasia, corner fracture type." The geneticist expressed that the "clinical significance of this specific variant remains unknown" and reiterated prior opinions about how hypermobile EDS could result in diminished bone strength.

The trial court summarily denied the parents' fourth motions, commenting that the twins had already undergone genetic testing before the initial trial; the mother had not contacted the geneticist for nearly one year after the initial final judgment's entry; the geneticist's notes indicated the identified corner fracture variant was of "unknown" clinical significance; and the geneticist's conclusions largely echoed the parents' previously provided expert testimony. This consolidated appeal of the trial court's denials of the third and fourth motions follows.

## Analysis

The trial court's denial of a motion for extraordinary relief filed pursuant to Florida Rule of Juvenile Procedure 8.270 is reviewed for an abuse of discretion. *See S.K. v. Dep't of Child. & Fams.*, 839 So. 2d 876, 876 (Fla. 4th DCA 2003).

We have previously reviewed the trial court record and the issues raised in the parents' appeals of the amended final judgments regarding the terminations of the parents' parental rights. Those amended final judgments were affirmed. *See T.P.*, 395 So. 3d at 151; *M.P.*, 395 So. 3d at 150. The instant matter does not require us to revisit those affirmances. We are merely reviewing the trial court's orders denying the parents' requests for a new trial on the alleged ground of newly discovered evidence.

5

In a dependency case, the parents may seek relief from a judgment on the basis of "[n]ewly discovered evidence which by due diligence could not have been discovered in time to move for rehearing." *See C.R. v. Dep't of Child. & Fams.*, 53 So. 3d 240, 242 (Fla. 3d DCA 2010) (quoting Fla. R. Juv. P. 8.270(b)(2)). The caselaw regarding motions for relief from final judgments in a dependency context is relatively undeveloped, but caselaw applying Florida Rule of Civil Procedure 1.540—the counterpart to Florida Rule of Juvenile Procedure 8.270—provides guidance. *See In re B.H.*, 893 So. 2d 639, 639 (Fla. 2d DCA 2005).

Relief on the basis of newly discovered evidence is rarely appropriate, because finality of judgments is "axiomatic in our system of justice." *See Junda v. Diez*, 848 So. 2d 457, 458 (Fla. 4th DCA 2003). Rules authorizing relief on this ground are not designed to reopen lawsuits "to allow parties to state new claims or offer new evidence omitted by oversight or inadvertence." *See Cleveland v. Crown Fin., LLC*, 212 So. 3d 1065, 1068 (Fla. 1st DCA 2017). This is especially so in a dependency case, when "the interest in finality is *substantially heightened in the TPR context* by the very important consideration that must be given to the child's interest in reaching permanency and to the harm that results when permanency is unduly delayed." *J.B. v. Dep't of Child. & Fams.*, 170 So. 3d 780, 792 (Fla. 2015) (emphasis added).

### ***Due Diligence***

The party moving for relief on the basis of newly discovered evidence must demonstrate due diligence. *See Neopolitan Enters., LLC v. Fishman*, 303 So. 3d 1258, 1260–61 (Fla. 2d DCA 2020). The trial court should deny the motion if the moving party could have discovered the evidence before the deadline to move for rehearing. *See Belk v. McKaveney*, 903 So. 2d 337, 338 (Fla. 2d DCA 2005).

Here, the trial court properly denied the parents' third and fourth motions for extraordinary relief because the parents did not act with the requisite due diligence.

With regard to the third motions, the parents did not contact the bone fragility expert until *after* the trial court issued the amended final judgments. Additionally, the parents' motivation for contacting the bone fragility expert was to contradict the trial court's findings in the amended final judgments, after the parents already had an opportunity to present evidence at the initial and reopened trials. Specifically, the parents sought to "dig deeper into additional signs of bone fragility and to determine if it is possible to date the initial fractures." The parents' "vigilance" is not

apparent based on these facts, and the trial court properly denied the third motions. *See Neapolitan*, 303 So. 3d at 1260–61.

The parents' fourth motions fare no better, because the parents admittedly did not contact the geneticist until nearly one year after the trial court had issued its initial final judgments. By that point, the parents allegedly had suspected a genetic anomaly could account for the twins' injuries. In fact, the twins had already undergone genetic testing, and the parents initially moved to reopen the trial once the mother had received her genetic test results for EDS.

We are not unsympathetic that the loss of the mother's employment and insurance coverage created financial hardship for the parents, but hardship will not exempt a party from the due diligence requirement when moving for relief on the basis of newly discovered evidence. *See Junda*, 848 So. 2d at 458. Thus, the trial court properly denied the parents' fourth motions.

### ***Newly Discovered Evidence***

"A [litigant] who 'seeks to present new experts, who draw different conclusions, does not present a claim of newly discovered evidence.'" *Vega v. State*, 288 So. 3d 1252, 1257 (Fla. 5th DCA 2020) (quoting *Fuster v. State*, 664 So. 2d 18, 20 (Fla. 3d DCA 1995)); *see also Asay v. State*, 210 So. 3d 1, 22–23 (Fla. 2016) ("New opinions or new research studies have routinely been rejected as newly discovered evidence."). The trial court should deny a motion for relief from judgment based on newly discovered evidence when the moving party merely retains a new expert who reviews the same records or attacks a prior expert's opinions. *See Asay*, 210 So. 3d at 23; *Vega v. State*, 363 So. 3d 208, 213 (Fla. 6th DCA 2023) (rejecting a new expert's opinion as newly discovered evidence when the purpose was to criticize a prior expert's analysis and conclusions).

Notwithstanding the fact that the parents failed to exercise due diligence, the trial court properly denied the parents' third and fourth motions because those motions did not allege newly discovered evidence.

With regard to the third motions, the bone fragility expert's opinion was based on medical records that had been previously admitted at trial and reviewed by prior medical witnesses. This did not qualify as newly discovered evidence. *See Asay*, 210 So. 3d at 23. Moreover, the bone fragility expert disagreed with prior testimony on multiple topics, including the misdiagnosis of a brain fracture and the timing of the twins' injuries. Prior medical testimony already had explored and discussed these topics, so the bone fragility expert's disagreement on these already-presented

7

topics was not newly discovered evidence. And the bone fragility expert's opinion that brittle bone disease, EDS, or a vitamin D deficiency could have played a role in the twins' injuries had not only been contradicted by the evidence at the initial and reopened trials but had already been rejected by the trial court. *See Vega*, 288 So. 3d at 1257; *Vega*, 363 So. 3d at 213.

The same is true for the geneticist's opinion, which served as the basis for the parents' fourth motions. The geneticist opined that hypermobile EDS could diminish fetal bone strength, but one of the parents' experts already had extensively discussed hypermobile EDS at the reopened trial. On this point, the geneticist provided a cumulative opinion which the trial court already found not credible, which is not newly discovered evidence. *See Asay*, 210 So. 3d at 23.

Finally, even if the geneticist had identified a genetic variant potentially connected to corner fractures, we are not persuaded that the trial court abused its discretion. The geneticist admitted that the clinical significance of this variant "remains unknown," and as the trial court noted, the twins already had undergone genetic testing prior to the initial trial. The genetic test results had been discussed during both the initial and reopened trials. But also, the trial testimony revealed the twins had sustained other injuries associated with traumatic impacts and forceful movements besides corner fractures, including multiple rib fractures, a skull fracture, a bruised eye with a ruptured blood vessel, and a lacerated liver.

## Conclusion

"Termination cases are frequently referred to as the civil death penalty for families." *J.V. v. Dep't of Child. & Fams.*, 326 So. 3d 76, 81 (Fla. 4th DCA 2021) (quoting *C.S. v. Dep't of Child. & Fams.*, 124 So. 3d 978, 981 (Fla. 4th DCA 2013) (Warner, J., dissenting)). The high stakes necessitate providing the parent(s) with a full opportunity to be heard and for the Department to prove its case by clear and convincing evidence.

Here, the trial court heard extensive testimony and considered a substantial amount of evidence proffered by both parties. We initially affirmed the trial court's detailed eighty-eight-page amended final judgments. Nonetheless, the trial court considered three subsequent motions for extraordinary relief, i.e., a reconsideration of its TPR orders. The trial court denied those motions. We have reviewed the record and briefs with respect to the third and fourth motions. We conclude that, because the parents did not exercise due diligence and failed to put forth newly discovered evidence, the trial court did not abuse its discretion when it denied the parents' third and fourth motions for extraordinary relief. Thus, we affirm the trial court's denial of all these motions.

*Affirmed.*

WARNER and CONNER, JJ., concur.

*   *   *

**Not final until disposition of timely filed motion for rehearing.**